Filing # 238422849 E-Filed 12/28/2025 06:42:11 PM

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR COLLIER COUNTY, FLORIDA

**THE DOC APP, INC. d/b/a MY FLORIDA GREEN,** *a Florida corporation,*

**Plaintiff,**

v.

Case No.: _____

**LEAFWELL, INC.,** a Delaware corporation; **EMILY FISHER,** an individual; **CRESCO LABS, LLC,** a foreign limited liability company; **11220 SE 179TH LLC, d/b/a, INSA – CANNABIS FOR REAL LIFE (MMTC-2019-0016),** a Florida medical marijuana treatment center; **BILL'S NURSERY, INC., d/b/a/, THE FLOWERY (MMTC-2019-0020),** a Florida medical marijuana treatment center; **CURALEAF FLORIDA, LLC d/b/a CURALEAF (MMTC-2015-0001),** a Florida limited liability company and medical marijuana treatment center; **VERANO HOLDINGS, LLC; PLANTS OF RUSKIN, LLC d/b/a MÜV (MMTC-2017-0010),** a Florida limited liability company and medical marijuana treatment center; **CANSORTIUM FLORIDA, LLC d/b/a FLUENT (MMTC-2015-0003),** a Florida limited liability company and medical marijuana treatment center; **CARLOS SAMUEL DIAZ-BARCELO, M.D.,** an individual; **CARLOS DIAZ-BARCELO, M.D., P.A.,** a Florida profit corporation, **AMIR HESAM ETEMADNIA, M.D.,** an individual, and **ALL ABOUT MEDICINE LLC.,** a Florida limited liability company.

**Defendants.**

_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff **The Doc App, Inc. d/b/a My Florida Green** ("**My Florida Green**" or "**MFG**"), by and through undersigned counsel, sues Defendants and alleges as follows:

**Introduction:**

1. This action seeks declaratory and injunctive relief, and damages, arising from a coordinated Florida marketing and event campaign offering purported "free" medical marijuana certifications. Plaintiff alleges that Defendants used patient-facing "free certification" messaging and in-person certification events, coupled with dispensary participation and inducements, to steer patients, distort competition, and divert patients and goodwill from compliant certification providers.

2. Plaintiff alleges that the challenged conduct violates Florida public policy and statutory safeguards designed to keep certifying physicians independent from dispensary financial influence and to prevent remuneration-based steering. Plaintiff seeks narrowly tailored relief to stop the specific practices alleged, require meaningful disclosures for any future patient-facing promotions involving MMTC participation or support, and recover damages and other relief authorized by Florida law.

**The parties:**

3. **Plaintiff, The Doc App, Inc., (d/b/a, My Florida Green) is a Florida corporation with its principal place of business in Naples, Florida.** MFG operates a medical marijuana physician network and patient certification service, helping qualified patients obtain state-required medical cannabis certifications lawfully and ethically. MFG charges patients a reasonable fee for medical evaluations and maintains strict independence from any dispensary or Medical Marijuana Treatment Center ("MMTC"), in compliance with Florida law. Plaintiff operates multiple locations across Florida and serves patients statewide, including in Southwest Florida. Plaintiff's business depends on lawful patient relationships and recurring renewals required by Florida's certification framework; diversion of patients through unfair or unlawful inducements causes immediate revenue loss and longer-term harm to goodwill and patient continuity of care.

4. **Defendant Leafwell, Inc. ("Leafwell"**) is a Delaware corporation authorized to transact business in Florida. According to Leafwell's public filings with the Florida Department of State, Division of Corporations ("Sunbiz"), Leafwell lists its **principal and mailing address as 9100 S. Dadeland Blvd., Suite 1701, Miami, Florida 33156, and identifies its Chief Executive Officer,**

**Emily Fisher, at the same Miami address. Leafwell's registered agent for service of process in Florida is COGENCY GLOBAL INC., 115 N. Calhoun St., Ste. 4, Tallahassee, Florida 32301**. Leafwell conducts substantial business in Florida, including marketing and providing medical-marijuana physician certification services to Florida residents, including through in-person events and "pop-up" clinics held within the State of Florida. Leafwell is therefore subject to personal jurisdiction in Florida. **(See Exhibit 1.)**

5. **Defendant Emily Fisher ("Fisher")** is an individual who, upon information and belief, serves as Leafwell's Chief Executive Officer. According to Leafwell's Sunbiz filings, Fisher is identified as Leafwell's CEO and is listed at **9100 S. Dadeland Blvd., Suite 1701, Miami, Florida 33156.** Upon information and belief, Fisher directed, authorized, or ratified Leafwell's Florida-focused business practices alleged herein, including the planning, marketing, and execution of Leafwell's Florida certification events and related business relationships. To the extent Fisher resides outside Florida, she is nevertheless subject to personal jurisdiction in Florida because, upon information and belief, she personally participated in and/or directed tortious conduct purposefully aimed at Florida and carried out, at least in part, within Florida, giving rise to the claims alleged in this Complaint.

6. **Defendant Cresco Labs, LLC ("Cresco")** is a foreign limited liability company authorized to transact business in Florida. **According to Cresco's Sunbiz filings, Cresco lists its principal address as 600 W. Fulton St., Suite 800, Chicago, Illinois 60661, and identifies its registered agent for service of process in Florida as COGENCY GLOBAL INC., 155 N. Calhoun St., Ste. 4, Tallahassee, Florida 32301.** Upon information and belief, Cresco owns, controls, or operates—directly or through one or more subsidiaries or affiliated entities—the "Sunnyside" dispensary brand in Florida and participates in Florida's medical marijuana market, including through marketing activities directed at Florida patients. In addition, Sunnyside (MMTC-2017-0008) is identified by the Florida Office of Medical Marijuana Use as a Florida MMTC brand operating under license number MMTC-2017-0008, with a listed company address of 6001 N. University Drive, Tamarac, Florida 33321. Upon information and belief, Cresco and/or Sunnyside participated in the certification events and practices described herein, targeting Florida patients and deriving substantial revenue from Florida sales and related activity. Cresco (and Sunnyside, as applicable) is therefore subject to personal jurisdiction in Florida. **(See Exhibit 1.)**

7. **Defendant Curaleaf Florida, LLC d/b/a Curaleaf ("Curaleaf")** is a Florida limited liability company that does business in Florida's medical marijuana

market. According to Curaleaf's public filings with the Florida Department of State, Division of Corporations ("Sunbiz"), Curaleaf's document number is **L08000089786** and its FEI/EIN is **47-3712491**. Curaleaf's principal and mailing address is **10720 Caribbean Blvd., Suite 500, Cutler Bay, Florida 33189**, **and its registered agent for service of process in Florida is Corporation Service Company, 1200 Hays Street, Tallahassee, Florida 32301**. Curaleaf's listed member is PalliaTech Florida, Inc., 290 Harbor Drive, Stamford, Connecticut 06902. Curaleaf is identified by the Florida Office of Medical Marijuana Use as an approved medical marijuana treatment center ("MMTC") operating under license number **MMTC-2015-0001** and conducting business throughout Florida through Curaleaf-branded dispensaries. Upon information and belief, Curaleaf participated in Leafwell certification events in Florida and, as reflected in Leafwell's public materials, Curaleaf representatives were present in connection with such events and provided patient-facing promotions and incentives. Curaleaf's operations in Florida subject it to the jurisdiction of this Court. Curaleaf is therefore subject to personal jurisdiction in Florida. **(See, Exhibit 1)**

8. **Defendant Verano Holdings, LLC ("Verano")** is a Delaware limited liability company authorized to transact business in Florida. According to Verano's public filings with the Florida Department of State, Division of

Corporations ("Sunbiz"), Verano's document number is M21000003965 and its FEI/EIN is 82-4735831; its principal and mailing address is 224 W. Hill St., Suite 400, Chicago, Illinois 60610-2506; and its registered agent for service of process in Florida is Universal Registered Agents, Inc., 1317 California St., Tallahassee, Florida 32304. Verano is the parent company to **Defendant Plants of Ruskin, LLC** d/b/a MÜV ("MÜV") is a Florida limited liability company that, upon information and belief, owns and operates the MÜV dispensary brand in Florida. According to Sunbiz, **Plants of Ruskin, LLC's document number is L17000186716 and its FEI/EIN is 59-1954831; its principal address is 5909 US Highway 41 North, Apollo Beach, Florida 33572; its mailing address is 224 W. Hill St., Suite 400, Chicago, Illinois 60610-2506; and its registered agent for service of process in Florida is Universal Registered Agents, Inc., 1317 California Street, Tallahassee, Florida 32304.** The Florida Office of Medical Marijuana Use identifies MÜV as an approved medical marijuana treatment center ("MMTC") operating under license number MMTC-2017-0010. Leafwell and MÜV jointly marketed and promoted "FREE Medical Marijuana Cards" events in Florida under co-branded materials stating "leafwell × müv," including events advertised for Fort Lauderdale (July 25–26) and Bonita Springs (August 12–13). Upon information and belief, MÜV representatives

were present and provided patient-facing promotions and incentives in connection with these events. MÜV's Florida operations (and Verano's Florida-registered status and control/operation of MÜV through Florida entities) subject them to the jurisdiction of this Court. Verano and MÜV are therefore subject to personal jurisdiction in Florida. **(See. Exhibit 2)**

9. Defendant, **11220 SE 179TH LLC, d/b.a.,** INSA – Cannabis for Real Life (MMTC-2019-0016), operated in Florida through 11220 SE 179TH LLC, a Florida limited liability company (Doc. No. L22000058990), is an approved Florida Medical Marijuana Treatment Center ("MMTC") operating under license number MMTC-2019-0016. INSA operates medical cannabis dispensing operations in Florida and, upon information and belief, is part of a multi-state cannabis enterprise. Upon information and belief, INSA's Florida MMTC operations are conducted through **11220 SE 179TH LLC, a Florida limited liability company with a principal and mailing address of 35 Center Street, Chicopee, MA 01013, and its registered agent for service of process is Patrick Gottschlicht, 1250 Hobbs Road, Auburndale, FL 33823.** INSA has sponsored or participated in Leafwell's free certification clinics in Florida, including as reflected in **Exhibit 3**. INSA's ongoing MMTC operations and Florida-directed activities subject it to the jurisdiction of this Court. INSA is therefore subject to personal jurisdiction in Florida.

10. **Defendant The Flowery / Bill's Nursery, Inc.,** is an approved Florida MMTC operating under license number MMTC-2019-0020 and dispensing medical marijuana in Florida under the brand name "The Flowery." Upon information and belief, the Florida MMTC operations conducted under the "The Flowery" brand are carried out through Bill's Nursery, Inc., a Florida profit corporation. According to **Sunbiz, Bill's Nursery, Inc. is ACTIVE (Document No. F62501; FEI/EIN 59-2168527)** with a **principal and mailing address of 30003 SW 197 Avenue, Homestead, FL 33030**, and its **registered agent for service of process is Elad Kohen, 380 NW 24 Street, Miami, FL 33127**. Upon information and belief, The Flowery participated in and/or benefitted from Leafwell's "free certification" events and related patient-facing promotions in Florida, including through coordinated marketing, on-site promotional activity, patient incentives, and/or other support associated with Leafwell event operations. Discovery will confirm the dates, locations, communications, and the financial and marketing arrangements (if any) connecting The Flowery to these events, including any sponsorship, underwriting, or consideration exchanged. The Flowery is therefore subject to personal jurisdiction in Florida. **(See Exhibit 4.)**

11. **Defendant Cansortium Florida, LLC** d/b/a FLUENT ("Fluent") is a Florida limited liability company that does business in Florida's medical marijuana

market under the FLUENT brand. According to Sunbiz, Cansortium Florida, LLC is ACTIVE (Document No. L15000068925) with a principal address of 5540 W. Executive Drive, Suite 100, Tampa, FL 33609, and its registered agent for service of process is Samantha Hymes, 5540 W. Executive Drive, Suite 100, Tampa, FL 33609. Fluent is an approved Florida MMTC operating under license number MMTC-2015-0003 and conducts business throughout Florida through FLUENT-branded dispensaries. FLUENT publicly markets Leafwell to Florida patients as a physician certification option. On FLUENT's website under its "Physicians" section, FLUENT lists "Leafwell," states that a prescribing physician will be assigned at the time of appointment, represents that Leafwell has "Multiple Locations in the State," and directs patients to "Schedule an appointment" by calling (800) 660-9085. This marketing directs Florida patients from an MMTC to a particular certifying service and evidences coordinated patient acquisition practices tied to certification services. Fluent's operations in Florida subject it to the jurisdiction of this Court. Fluent is therefore subject to personal jurisdiction in Florida. **(See Exhibit 5.)**

12. Plaintiff will amend to substitute, correct, and/or add the correctly named Florida MMTC entity and any affiliated entities or persons upon confirmation through corporate records and discovery.

13. **Defendant, Dr. Carlos Diaz-Barcelo ("Dr. Diaz-Barcelo"),** is a Florida-licensed medical doctor (License No. ME158780, Clear/Active) authorized by the Florida Department of Health to order medical and low-THC cannabis for qualified patients in Florida. Dr. Diaz-Barcelo practices through his professional association, **Defendant, CARLOS DIAZ-BARCELO, M.D., P.A.,** a Florida profit corporation (Document No. P22000026533) with its principal place of business at 7200 Curry Ford Road, Orlando, Florida 32822. Upon information and belief, Dr. Diaz-Barcelo performed medical marijuana patient evaluations in Florida in connection with Leafwell's platform and/or Leafwell-promoted in-person events. As reflected in his written response to Plaintiff's cease-and-desist demand, Dr. Diaz-Barcelo confirmed that he "discontinued [his] involvement and participation in the patient certification events," and that he had "fully complied" with the demands in Plaintiff's notice as of October 5, 2025, thereby confirming that his relationship with and participation in Leafwell-related certification events existed prior to that date and was terminated as of that date. **(See Exhibit 6.)**

14. **Defendant, Amir Hesam Etemadnia, M.D.** ("Dr. Etemadnia"), is a Florida-licensed physician who, upon information and belief, performed medical marijuana patient evaluations in Florida in connection with Leafwell's platform and/or Leafwell-promoted in-person events. Dr. Etemadnia practices

through Defendant, **ALL ABOUT MEDICINE**, LLC., located at **10125 W. Colonial Drive, Ocoee, Florida 34761**, with email info@allaboutmedicine.com**, and registered agent, "ETEMADNIA, AMIR, DR. 2418 CHELSEA ST ORLANDO, FL 32803**." As reflected in his written response to Plaintiff's cease-and-desist demand, Dr. Etemadnia confirmed that, with "advice of counsel," he "discontinued all involvement in the medical cannabis certification events affiliated with Leafwell Inc.," and that he had "fully complied" with the demands in Plaintiff's notice as of **September 23, 2025**, thereby confirming that his relationship with and participation in Leafwell-related certification events existed prior to that date and was terminated as of that date. **(See Exhibit 7.)**

**Jurisdiction, Venue, and General Allegations**

15. **Subject Matter Jurisdiction:** This is an action for injunctive and declaratory relief and for damages exceeding $50,000, exclusive of interest, costs, and attorneys' fees. Plaintiff's claims arise under Florida statutes and Florida common law. This Court has subject matter jurisdiction pursuant to Article V of the Florida Constitution and section 26.012, Florida Statutes.

16. **No Federal Diversity Jurisdiction:** This action is not within the federal courts' diversity jurisdiction under 28 U.S.C. § 1332 because complete

diversity is lacking. Plaintiff is a Florida citizen, and one or more Defendants are also Florida citizens, including Florida entities and Florida-licensed physicians who, upon information and belief, are domiciled in Florida. Because Plaintiff and at least one Defendant share Florida citizenship, the matter is not removable on diversity grounds.

17. **Personal Jurisdiction:** Each Defendant is subject to personal jurisdiction in Florida pursuant to Florida's long-arm statute, § 48.193, Fla. Stat. Defendant Leafwell, Inc. and its CEO Emily Fisher committed tortious acts within Florida by orchestrating and carrying out the unlawful scheme targeting Florida patients and businesses, and they engaged in business in Florida by marketing and providing medical services in the state. The MMTC Defendants (Cresco Labs, Curaleaf, MUV, Sunnyside, Insa, and The Flowery) are either Florida entities or entities carrying on a business venture in Florida, and they participated in the wrongful acts in Florida that give rise to this suit. The Defendant physicians (Dr. Diaz-Barcelo and Dr. Etemadnia) are Florida residents or otherwise are "operating, conducting, engaging in or carrying on a business or business venture in this state" by virtue of practicing medicine in Florida (and specifically providing medical marijuana certifications to Florida patients) and are also alleged to have committed tortious acts in Florida. Exercising jurisdiction over all Defendants comports with due

process because each Defendant has sufficient minimum contacts with Florida and has purposefully availed itself of the Florida market, such that each could reasonably anticipate being haled into a Florida court for misconduct here.

18. **Venue:** Venue is proper in Collier County because (a) a substantial part of the acts and omissions giving rise to this action occurred within the Twentieth Judicial Circuit, including Leafwell's Florida in-person certification events marketed to—and upon information and belief attended by—patients in the Fort Myers/Naples market (including the Bonita Springs area); (b) Defendants' coordinated promotional practices were directed into Collier County and targeted Collier County residents, resulting in diversion of patients, goodwill, and revenue from Plaintiff within this County; and (c) one or more Defendants conduct business in Collier County and/or maintain patient-facing operations here, such that the operative conduct and resulting injury are centered in this forum.

19. **General Allegations:** All conditions precedent to the bringing of these claims have been satisfied, excused, or waived. Whenever reference is made to any act or omission of any Defendant, it is alleged to be the act or omission of that Defendant individually and also the act or omission of the other Defendants acting in concert, pursuant to a common scheme or conspiracy, and/or as agents or partners of one another, as the context allows.

## Factual Background

20. Florida's medical marijuana program is strictly regulated to ensure that certifying physicians remain independent from dispensaries and that patients are not steered by financial inducements. Florida law expressly forbids specified financial relationships between certifying physicians and MMTCs.

21. In particular, Florida Statutes § 381.986 makes it unlawful for a qualified physician who issues medical marijuana certifications to be employed by, or have any direct or indirect economic interest in, an MMTC. It states, **"(b) A qualified physician may not be employed by, or have any direct or indirect economic interest in, a medical marijuana treatment center or marijuana testing laboratory." § 381.986 (3)(b).** Likewise, an MMTC is prohibited from employing or compensating physicians who recommend cannabis, to avoid conflicts of interest in patient care.

22. **Florida's Patient Brokering Act**, § 817.505, Fla. Stat., further reinforces these principles by making it **illegal for any person to offer, pay, solicit, or receive any commission, bonus, rebate, kickback, or bribe – directly or indirectly – in exchange for the referral of patients** to any health care provider or facility.

23. Florida law prohibits remuneration-based steering and patient brokering in connection with health care referrals, and provides criminal penalties for such conduct. These prohibitions exist to protect patients and ensure medical decisions are based on patients' health needs rather than financial inducements.

24. **Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")** makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat.

25. **Florida's Patient Brokering Act** prohibits the use of compensation to induce or reward patient referrals, including where a person "offer[s] or pay[s] a commission, benefit, bonus, rebate, kickback, or bribe… in any form whatsoever, to induce the referral of a patient or patronage," or "solicit[s] or receive[s]" the same "in any form whatsoever" in return for referring a patient or in return for the acceptance or acknowledgment of treatment. § 817.505(1)(a)–(c), Fla. Stat.

26. A business model that uses compensation or other inducements to steer patients—directly or indirectly—may constitute an "unfair" practice under FDUTPA where it offends established Florida public policy and statutory

safeguards designed to protect consumers and preserve the integrity of health care decision-making. Here, as alleged, Defendants' "free certification" promotions, coupled with dispensary participation and patient-facing incentives, constitute unfair methods of competition and/or unfair acts or practices. In addition, marketing certifications as "free" without clear and conspicuous disclosure of material information regarding any dispensary involvement, sponsorship, underwriting, marketing support, or other consideration connected to the promotion may mislead reasonable consumers and is actionable under FDUTPA as a deceptive act or practice.

27. **My Florida Green's Legitimate Business Model –** Plaintiff My Florida Green ("MFG") is a pioneer in Florida's medical cannabis sector, providing physician evaluations and ongoing patient support **with a commitment to legal compliance and patient-centric ethics**. MFG's network of doctors across Florida evaluate patients for medical marijuana eligibility and, if appropriate, enter the required physician certifications in the state registry. **MFG charges patients a transparent fee for these medical services** (typically ranging from approximately $99–$200 for initial visits, consistent with industry standards) and **does not accept any payment or kickback from dispensaries or other third parties**. This ensures that patients receive

independent medical advice, untainted by any dispensary influence, and it keeps the **playing field fair among providers**.

28. Prior to the events giving rise to this suit, MFG had built a substantial patient base through honest competition and compliance. It invested in educating patients, upholding state law, and establishing goodwill in the community. MFG's revenue derives from the professional services its physicians provide; it does *not* profit from any cannabis sales. By all accounts, MFG and other legitimate clinics were operating on the understanding that **no one in Florida could lawfully offer "free" certifications**, since doctors must be paid (and *only by patients*), and any subsidy or outside payment would violate the statutes cited above. MFG thus set its prices at reasonable, market rates and relied on the quality of its services and reputation to attract patients.

**Emergence of Leafwell's "Free Certification" Scheme**

29. **Emergence of Leafwell's "Free Certification" Scheme** – In mid-2025, My Florida Green noticed a sudden, drastic downturn in patient inquiries and appointment volume. **"We saw a reduction in our patient flow by about 50%, which was massive,"** recounted MFG's CEO, Nicholas Garulay. Alarmed, MFG investigated the cause and soon discovered a troubling new competitor behavior in the marketplace: **Leafwell's promotional "pop-up"**

clinics advertising *free* medical marijuana certifications. This was unprecedented in Florida's regulated system, because as explained, a physician's certification work is a professional service that normally entails a fee paid by the patient. MFG's leadership immediately recognized that something "free" in this context was, at best, highly suspicious – if not outright **"awkward and illegal"**.

30. Leafwell is a telehealth platform that expanded into Florida offering online cannabis doctor visits. But to rapidly gain market share, Leafwell embarked on a strategy of hosting in-person events across the state where it would provide *complimentary* certifications to qualified patients. Leafwell's website and social media heavily promoted these clinics, often held over one or two days in a given city, touting that patients could **"get certified for medical cannabis for free"** (See. Exhibit 1). (aside from the standard state ID card fee). These events were often marketed in partnership with local community organizations or advertised on platforms like Facebook and Reddit, generating significant buzz among Florida patients seeking to avoid paying normal doctor fees.

31. Leafwell's public-facing marketing materials and online statements represented that patients could be **"certified for free"** at in-person Florida events, and that Leafwell would "cover" or otherwise eliminate the physician

consultation cost for attendees, while dispensary partners were promoted as participating in connection with those events. As reflected in Leafwell's own communications and promotional materials, these events were designed to attract and convert Florida patients through "free certification" messaging coupled with dispensary-linked promotions.

32. **Based on Defendants' marketing, public statements, and on information and belief**, Leafwell's in-person events were structured and promoted in a manner that encouraged attendees to engage with participating dispensaries immediately after certification. **Typically, and as discovery will further confirm**, the model operated as follows:

    a. **MMTC Participation/Sponsorship (Upon Information and Belief):** Upon information and belief, one or more MMTCs participated in or supported Leafwell in-person events, including through coordinated marketing, on-site presence, patient-facing promotions, and/or financial or in-kind support connected to event operations and/or certifications. The event was advertised to patients as "free" (or "Leafwell is covering your consultation fee"), while the nature and scope of any MMTC involvement or support was not clearly disclosed to patients at the time of scheduling or certification. Discovery will

confirm the terms, if any, of sponsorship, underwriting, reimbursement, marketing support, or other consideration.

b. **Event Promotion:** Leafwell advertises the **"Free Medical Marijuana Card Event"** through online channels, making no mention of the dispensary's financial involvement. Patients are enticed by the offer of a free certification exam (saving them typically $99–$200) and perhaps other perks like discounts on medicine.

c. **On-Site Certification:** The event is held at a public venue (e.g. a hotel conference room or community center). A Leafwell-affiliated doctor (like Dr. Diaz-Barcelo or Dr. Etemadnia) conducts brief in-person evaluations. If the patient qualifies, the doctor issues the certification on the spot. **Patients receive their requisite physician approval without paying anything** out-of-pocket for the medical consult.

d. **Dispensary Marketing: Dispensary representatives are present on-site, often with branded tables or booths, to** "mingle with" and immediately **engage the newly certified patients**. The reps hand out **"event-specific promotions and discounts"** on cannabis products – for example, a coupon for a significant percentage off the patient's first purchase, or free merchandise in a goodie bag. They may assist patients in registering for the state card and direct them to the nearest dispensary

location (often theirs). **In essence, the patient, fresh in hand with a doctor's approval, is steered directly to become the dispensary's customer**.

e. **Lack of Transparency:** Patients are not clearly informed, prior to or at the point of care, of the existence and terms of any financial relationship among Leafwell, certifying physicians, and participating MMTCs. The "free" framing, coupled with on-site MMTC promotions, is designed to influence patient choice of provider and dispensary without meaningful disclosure of the underlying sponsorship arrangement.

33. Leafwell's own marketing materials confirm many aspects of this scheme. In an October 2025 Leafwell blog post celebrating the success of its pop-up events, Leafwell boasted that **"thousands of patients across Florida have been certified for medical cannabis at Leafwell's new pop-up events"** in cities including Orlando, Jacksonville, and Miami, **"with Tampa, Fort Lauderdale, and other cities on the horizon."** Leafwell explained that at these events patients get evaluated and certified for free, and **"after certification, individuals also have the opportunity to meet with friendly staff from leading local dispensaries, such as Sunnyside, and Insa, who provide event-specific promotions and discounts."** According to Leafwell,

the experience *"enables dispensary partners to reach new customers and educate them about the best products and strains for their needs."* In Leafwell's own words, the arrangement is presented as a **"seamless"** win-win for patients and dispensaries alike—seamless, perhaps, **except for the serious legal violations it entails**. (See. Exhibit 8)

34. Attendees at a Leafwell "free certification" event in Florida speak with staff from a local dispensary (right) offering branded gift bags and discounts to newly certified patients. Leafwell's events are explicitly designed to connect freshly-approved medical cannabis patients with the sponsoring MMTC's products on-site.

35. Upon information and belief, the "free" physician certifications marketed and provided at Leafwell pop-up events were financed, underwritten, or otherwise supported—directly or indirectly—through financial arrangements involving one or more MMTCs and/or dispensary-affiliated entities (including event sponsorship, marketing support, per-event underwriting, or other remuneration connected to the event and/or participating physicians). To the extent Defendants contend no such financial arrangements existed, discovery will confirm the nature, scope, and terms of any payments, reimbursements, sponsorships, marketing support, or other consideration exchanged in connection with these events.

36. Upon information and belief, the challenged event model created financial and promotional entanglements between certification services and MMTC marketing that Florida law is intended to prevent. The public-facing "free certification" messaging, coupled with on-site dispensary promotions and coordinated marketing, created strong incentives for patients to obtain certifications through Leafwell's events and to patronize participating MMTCs. Whether characterized as sponsorship, underwriting, marketing support, or another arrangement, the operative effect is the same: patient choice is influenced by dispensary-linked inducements tied to certification events, creating an unfair and deceptive marketplace. Discovery will confirm the precise financial terms and communications among Leafwell, participating physicians, and the MMTC Defendants.

37. Upon information and belief, Leafwell organized and promoted one or more "free certification" events attended by patients from Southwest Florida during 2025. At such events, Leafwell-affiliated physicians conducted in-person evaluations and issued certifications at no out-of-pocket cost to patients for the physician consultation, while one or more MMTCs participated on-site and/or in event marketing by distributing promotional materials, discounts, or other incentives designed to steer newly certified patients to particular

dispensaries. Discovery will confirm the dates, locations, participating MMTCs, and the physicians involved.

38. Upon information and belief, one or more MMTC Defendants participated in, supported, and/or promoted Leafwell's in-person "free certification" events, including through on-site presence, patient-facing incentives (e.g., discounts, coupons, store credits, promotions), coordinated marketing, and/or financial support connected to the event and/or certification services. These coordinated promotions and incentives functioned to steer newly certified patients toward particular MMTCs and to divert patients from compliant providers such as Plaintiff. Discovery will further identify the specific participating MMTCs, the marketing channels used, and the financial terms governing any sponsorship, underwriting, or remuneration.

39. Florida law and applicable OMMU rules require in-person, face-to-face evaluations in specified circumstances, including for initial certifications, and impose strict limits intended to prevent improper financial entanglements and remuneration tied to patient steering. The challenged conduct described herein violates Florida's public policy and statutory safeguards designed to separate patient care decisions from dispensary financial influence.

40. Defendants' actions were willful and coordinated. Such collaboration between a certifying physician service and retail sellers of medical cannabis would require coordination on event structure, promotion, logistics, and patient-facing incentives, and could not have occurred by accident. Discovery will confirm the communications among Defendants concerning event planning, promotional strategy, and any financial or in-kind arrangements connected to certification events.

41. The public interest favors enforcement of Florida's statutory safeguards designed to keep certifying physicians independent from dispensary financial influence and to prevent patient steering through remuneration or undisclosed inducements. Promotions that appear "too good to be true" in a regulated medical program warrant scrutiny because they can distort patient decision-making and undermine trust in the integrity of the certification process.

**Harm to My Florida Green and the Public**

42. The injurious impact of Defendants' conduct on My Florida Green was both **immediate and ongoing**. As noted, MFG saw roughly half of its typical patient flow vanish once the "free certification" events began rolling out.

43. Over the course of 2025, MFG experienced a net loss of at least 728 patients who likely would have used MFG's services but for being diverted by

Defendants' promotions. Each lost patient represents lost revenue for MFG (in consultation fees), lost opportunities for follow-up care business, and an erosion of goodwill and trust. **These are patients diverted by promotions that appeared "free" and were coupled with dispensary-linked incentives; upon information and belief, such promotions were connected to financial or marketing arrangements that Florida law prohibits or deems contrary to public policy.**

44. The **business relationships between MFG and its existing patients were disrupted** as well. Some long-time patients of MFG did not return for their renewal visits upon hearing that they could go to a Leafwell event and save money. MFG had a reasonable expectation of continuing relationships with these patients (absent illegal interference), given MFG's high patient satisfaction and the recurring nature of state-required re-certifications. Defendants' tactics of offering a free service (that legitimate providers could not match without breaking the law) effectively **poached these existing customers through improper means**. Similarly, new patients in the community who might have chosen MFG for their first medical marijuana evaluation were instead **induced to choose Leafwell by the financial bait**. This constitutes interference with MFG's **prospective business relationships**, as MFG regularly engages with prospective patients through

marketing and referrals, and reasonably expected to acquire a share of the growing patient market.

45. Importantly, this is not just about one competitor losing business to another through fair competition – it is about **unfair, unlawful competition that skews the market**. MFG and other law-abiding clinics could not counter Leafwell's promotions without violating the law themselves.

46. Defendants gained an illicit edge: Leafwell ballooned its patient base and brand recognition, while the dispensary Defendants gained hundreds of new paying customers (recouping their subsidy in the form of product sales to those patients). **Meanwhile, MFG's compliant model was undermined**, and its patients – many of whom suffer serious chronic conditions – were swept up in a scheme that **puts providers' and dispensaries' financial interests ahead of transparent patient care**.

47. The harm extends to the **public interest and the integrity of Florida's medical cannabis program**. By **blurring the lines between doctor and seller**, Defendants' conduct risks eroding patient trust in the system. If patients cannot be sure whether a doctor's recommendation is truly independent – or if they later learn it was influenced by a dispensary's payments – they may lose faith in the treatment regimen or the necessity of

follow-up visits (since those won't be free). Moreover, new patients drawn in by "free" certifications might be less prepared for the responsibilities of being a medical cannabis patient (as opposed to those who undergo a normal consultation process), which could lead to compliance issues or misuse. **Florida's legislature enacted the cited laws to prevent exactly these dangers**: the Patient Brokering Act to stop financial inducements in healthcare referrals, and § 381.986 to keep medical judgments separate from commercial cannabis interests. Defendants flouted these safeguards for profit, necessitating legal action to halt their conduct.

48. **Irreparable Harm (insert as new paragraph):** Defendants' conduct is ongoing and causes harm that is not fully compensable by money damages alone, including loss of patient relationships, loss of goodwill, market distortion through unlawful inducements, and erosion of trust in compliant certification services. Absent injunctive relief, Plaintiff will continue to suffer diversion of patients and reputational injury, and Florida patients will continue to be exposed to undisclosed or under-disclosed dispensary-linked inducements at the point of certification.

49. In summary, **Defendants orchestrated a statewide scheme to exchange "free" medical marijuana certifications for a stream of new customers at certain dispensaries**. This scheme entailed multiple statutory violations and

tortious acts, all of which converged to cause significant damage to Plaintiff My Florida Green's business and to undermine the fairness and transparency of Florida's medical marijuana marketplace. **Plaintiff now seeks redress in this Court – to enjoin the unlawful practices and to recover damages for the harm inflicted.**

50. Plaintiff has retained undersigned counsel and is entitled to recover its reasonable attorney fees and costs pursuant to Florida Law. Plaintiff has incurred attorney fees and costs.

## Causes of Action

51. Each of the following Counts re-alleges and incorporates by reference the allegations in paragraphs 1 through 50 above as if fully set forth therein.

**Count I – Declaratory/Injunctive relief based on unlawful financial relationships. Violation of <u>Fla. Stat. § 381.986(1)(h)</u> (i.e., Unlawful Physician–MMTC Financial Relationship)**

52. **(Against All Defendants)** – Florida Statutes § 381.986(1)(h) (as implemented, including § 381.986(3)(b)) provides that a qualified physician who issues medical marijuana certifications **"may not be employed by, or have any direct or indirect economic interest in, a medical marijuana treatment center."** This provision and related regulations **prohibit any**

**financial entanglement between certifying doctors and MMTCs**. The statute is designed to ensure that physicians' medical judgments regarding patient qualifications for cannabis are made independently, without influence from any dispensary or seller of the product.

53. As alleged above, Defendants' "free certification" events and associated dispensary participation created an unlawful or improper financial entanglement prohibited by § 381.986 and related rules. Upon information and belief, Leafwell structured and promoted events in which certification services were provided to patients at no out-of-pocket cost for the physician consultation, while MMTCs participated through coordinated marketing, on-site promotions, incentives, and/or other support connected to the events. Discovery will confirm the contractual and financial arrangements (if any) connecting Leafwell, participating physicians, and MMTC Defendants to the event model.

54. Upon information and belief, the physician Defendants' participation in Leafwell's event model involved arrangements that compromised the independence required of qualified physicians under § 381.986 by linking certification services to MMTC participation and dispensary-linked incentives. To the extent any MMTC funds, sponsorship, marketing support, reimbursement, or other consideration was provided in connection with

physician certifications—directly or indirectly—such arrangements constitute an unlawful "direct or indirect economic interest" and are prohibited. Discovery will confirm the existence and scope of any such consideration and the terms governing any event-based physician services.

55. **Defendant Leafwell, Inc. and Emily Fisher** organized, marketed, and executed the challenged Florida event model and related dispensary partnerships. Upon information and belief, Leafwell acted as the coordinating platform between physicians performing certifications and MMTCs participating in the events and promotions. To the extent Leafwell arranged for, facilitated, or benefitted from any financial or in-kind support by MMTCs connected to physician certifications, Leafwell and Fisher caused or substantially assisted the unlawful financial entanglements prohibited by § 381.986.

56. The actions alleged herein—linking certification services to dispensary participation, promotions, and any associated financial or in-kind support— are contrary to the independence requirements embodied in § 381.986 and the public policy it enforces. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury to its business (loss of patients, revenue, and goodwill), and the public interest has been harmed by erosion of

safeguards intended to keep medical judgments separate from commercial cannabis interests.

57. Plaintiff seeks declaratory and injunctive relief prohibiting Defendants from continuing any arrangements in which MMTCs provide payments, reimbursement, sponsorship, marketing support, or other consideration—directly or indirectly—connected to physician certification services or certification events in Florida. Such relief is appropriate to prevent ongoing and future harm and to ensure compliance with Florida's physician-independence requirements.

58. **Plaintiff also seeks damages** to the extent allowed by law, in an amount to be proven at trial, for the business losses caused by Defendants' statutory violations. Even if § 381.986 itself does not expressly provide a private damages remedy, Defendants' violation of this statute constitutes *per se* wrongdoing and an unlawful act that has proximately caused Plaintiff's damages – recoverable through the other causes of action pled herein (including FDUTPA, tortious interference, etc.). In this Count, Plaintiff pleads the statutory violation to establish the unlawful nature of Defendants' conduct and to support the relief sought under parallel legal theories.

**Count II – Declaratory/Injunctive relief based on unlawful brokerage relationship in Violation of <u>Fla. Stat. § 817.505</u> (Florida Patient Brokering Act)**

59.**(Against All Defendants)** – Florida's Patient Brokering Act (§ 817.505, Fla. Stat.) makes it **unlawful for any person or entity to offer, pay, solicit, or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, in exchange for referring patients to or from a health care provider or health care facility**. It likewise forbids any form of **split-fee arrangement** whereby compensation paid to a provider is contingent on the referral of a patient. The statute applies to any person, health provider, or health care facility (which would include physicians and possibly MMTCs, as the latter are medical cannabis dispensing facilities).

60.The conduct of Defendants described in detail above violates § 817.505 on multiple fronts. Upon information and belief, Defendants used Leafwell's "free certification" events, together with MMTC participation, coordinated promotions, and patient-facing incentives, to induce patient patronage and steer newly certified patients toward particular MMTCs. To the extent any remuneration, sponsorship, underwriting, reimbursement, marketing support, or other consideration was offered, paid, solicited, or received—directly or indirectly—in connection with referrals or patronage arising from these

events, such conduct violates § 817.505. Discovery will confirm the nature, scope, and terms of any such consideration.

61. **Unlawful offers/payments:** Upon information and belief, one or more MMTC Defendants provided or arranged for financial or in-kind support connected to Leafwell's event operations and/or certification services (including sponsorship, underwriting, marketing support, or other consideration) with the purpose or effect of inducing patient patronage and steering patients to the MMTC's dispensary operations through on-site promotions and incentives. Such conduct constitutes an unlawful offer or payment of a benefit "in any form whatsoever" to induce referrals or patronage, in violation of § 817.505(1)(a).

62. **Unlawful solicitation/receipts:** Upon information and belief, Leafwell solicited, accepted, or otherwise benefitted from MMTC involvement connected to its events by promoting dispensary "partners," facilitating on-site access to newly certified patients, and enabling MMTCs to market to patients immediately following certification. Public materials reflect that dispensary staff attended and provided event-specific promotions and discounts. Discovery will confirm the communications and any financial or in-kind consideration exchanged among Leafwell, physicians, and MMTCs in connection with these events.

63. **Defendant Emily Fisher**: Upon information and belief, Defendant Emily Fisher authorized and/or ratified Leafwell's Florida event model and the dispensary-partner marketing strategy described herein. Upon information and belief, the physician Defendants participated in certifications at Leafwell events where MMTCs marketed to newly certified patients through incentives and promotions. To the extent any MMTC funds, sponsorship, underwriting, reimbursement, or other consideration was provided—directly or indirectly—connected to certifications or referrals/patronage, such conduct violates § 817.505. Discovery will confirm Defendants' knowledge of, participation in, and benefit from any such remuneration arrangements.

64. Plaintiff pleads Defendants' violation of § 817.505 as predicate unlawful conduct supporting Plaintiff's claims for injunctive relief, FDUTPA relief, and common-law causes of action, and as evidence of improper means and conduct contrary to Florida public policy. To the extent § 817.505 is enforced primarily through criminal penalties, the unlawful conduct alleged remains actionable through Plaintiff's civil claims and equitable remedies to prevent ongoing harm and to restore lawful competition.

65. As a direct and proximate result of Defendants' patient brokering, Plaintiff suffered injury in the form of lost patients and revenues (since patients were brokered away from MFG to Leafwell/MMTCs via illegal inducements) and

loss of goodwill. These are the types of injuries that flow from unfair and illegal referral schemes, and they are the foreseeable result of violating § 817.505.

66. Plaintiff seeks injunctive relief restraining Defendants from offering, paying, soliciting, or receiving remuneration or other benefits, directly or indirectly, where the purpose or effect is to induce referrals or patient patronage in connection with medical marijuana certification services or events. This relief serves the public interest by preventing continued patient steering and protecting the integrity of Florida's regulated medical marijuana program.

67. Plaintiff also seeks to recover damages caused by Defendants' violations of § 817.505, in an amount to be determined at trial. Although § 817.505 itself provides for criminal penalties, the civil remedy is available via FDUTPA (Count III) and common-law claims (Counts IV–VI). Plaintiff incorporates the allegations of illegality here as support for those parallel claims. In any event, **equitable relief** (injunction, disgorgement) is especially warranted given the willful nature of Defendants' misconduct and the principle that **"no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong"**.

**Count III – Violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) – §§ 501.201–213, Fla. Stat.**

68. **(Against Leafwell, Inc., Emily Fisher, Cresco Labs/Sunnyside, Insa, and The Flowery)** – Plaintiff brings this claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against all Defendants except the individual physicians. (The physician Defendants are primarily liable under other counts; to the extent they are involved in trade practices, they are included by their coordination with Leafwell.)

69. FDUTPA declares unlawful any **"unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."** (§ 501.204(1), Fla. Stat.). A practice is **deceptive** if it is likely to mislead consumers acting reasonably under the circumstances about a material fact. A practice is **unfair** if it offends established public policy or is immoral, unethical, oppressive, or unscrupulous, and substantially injures consumers or competition.

70. **Deceptive Acts:** Defendants engaged in deceptive acts and omissions by advertising and offering "free" medical marijuana certifications to consumers while failing to disclose material facts concerning MMTC involvement, including the nature of any dispensary participation, sponsorship,

underwriting, marketing support, or other consideration connected to the events and promotions. Reasonable consumers would consider it material whether a cannabis retailer is involved in or supporting a physician certification promotion in a manner that could influence patient choice. The omission of clear, conspicuous disclosures about MMTC involvement and any associated financial or promotional arrangements was likely to mislead consumers acting reasonably under the circumstances.

71. **Unfair Acts/Methods of Competition:** Defendants' conduct was also "unfair" under FDUTPA. By engaging in conduct contrary to Florida's statutory safeguards and public policy designed to separate certifying physicians from dispensary financial influence and to prevent remuneration-based steering, Defendants' acts offend established public policy and are unethical and oppressive to consumers and competitors. Defendants gained a marketplace advantage through means that law-abiding competitors could not match—offering "free" certifications coupled with dispensary-linked promotions and incentives that distorted patient choice. As a result, consumers were funneled to a provider and a set of dispensaries not by superior service, but by undisclosed or under-disclosed inducements tied to certification events, and competitors like MFG were unfairly disadvantaged despite complying with the law.

72. The actions described—including marketing certification services as "free" while failing to provide clear, conspicuous disclosure of MMTC involvement and any associated sponsorship, promotional support, or other consideration, and leveraging dispensary-linked promotions to drive patronage—occurred in the conduct of trade or commerce, as Defendants were providing certification-related services and marketing and selling medical cannabis products.

73. **Causation and Actual Damage:** Plaintiff MFG has suffered actual damages as a result of Defendants' FDUTPA violations. FDUTPA allows a claim by "[a] person who has suffered a loss" due to a deceptive or unfair act (§ 501.211(2)). MFG lost a significant number of patients (and the fees those patients would have paid to MFG) because those consumers were deceived by Defendants' "free certification" offer and because Defendants unfairly siphoned away business through their unlawful program. But for Defendants' conduct, many of those patients would have used MFG's services (or continued to use them) – as evidenced by the timing of MFG's 50% drop in patient flow corresponding with Leafwell's campaign. Additionally, MFG has incurred expenses in response to Defendants' practices (such as increased marketing or educational outreach to counteract the misinformation). These economic injuries are directly tied to the deceptive/unfair acts.

74. **Relief Requested:** Pursuant to FDUTPA (§ 501.211), Plaintiff seeks **both injunctive relief and actual damages** against the relevant Defendants.

75. **Injunctive Relief:** Plaintiff requests a permanent injunction prohibiting Leafwell and Emily Fisher from advertising or offering "free" medical marijuana certifications in Florida without clear and conspicuous disclosure of any MMTC involvement and any sponsorship, subsidy, underwriting, marketing arrangement, or other support connected to the promotion or event. Plaintiff further seeks to enjoin Leafwell and the MMTC Defendants from coordinating certification events or promotions in a manner that unlawfully links certification services to dispensary patronage through remuneration or undisclosed inducements, and to require transparent disclosures to patients if any permissible promotion is offered in the future.

76. **Damages:** Plaintiff seeks an award of actual damages for the losses caused by Defendants' conduct. At minimum, this includes the lost profits from the approximate 728 patients that MFG lost (or failed to acquire) due to Defendants' scheme. These damages can be quantified by calculating the revenue MFG would have earned from initial visits and renewals for those patients over time, minus any saved costs. Plaintiff will provide competent evidence of this amount at trial. Plaintiff also seeks recovery of the diminution in its business goodwill and reputation, to the extent such loss can be

quantified, as it is a direct result of Defendants casting MFG as "expensive" by comparison to their illicit freebies.

77. Additionally, under FDUTPA's remedial provisions, **Plaintiff is entitled to recover its reasonable attorneys' fees and costs** upon prevailing in this action (§ 501.2105, Fla. Stat.). Defendants' knowing and willful nature of the violations may also be relevant to any considerations of equitable relief and the scope of remedies, though FDUTPA does not allow punitive damages.

78. In sum, Defendants have engaged in deceptive and unfair trade practices in violation of Florida law, causing harm to both consumers and Plaintiff. Plaintiff seeks full relief under FDUTPA to rectify these wrongs and deter such conduct in the future.

**Count IV – Civil Conspiracy**

79. **(Against All Defendants)** – Plaintiff alleges that **all Defendants conspired and agreed among themselves to carry out the unlawful scheme described above**, and each took overt acts in furtherance of the conspiracy, resulting in harm to Plaintiff.

80. **Agreement:** Upon information and belief, Defendants reached a meeting of the minds to promote and execute Leafwell "free certification" events in Florida in coordination with one or more MMTCs, including through on-site

access, coordinated marketing, and patient-facing incentives designed to steer newly certified patients toward participating dispensaries. Upon information and belief, Defendants understood that linking physician certification promotions to dispensary participation and inducements would provide mutual commercial benefits and would operate contrary to Florida's statutory safeguards and public policy. Discovery will confirm the communications, agreements, and terms of coordination among Defendants.

81. **Unlawful Acts/Overt Acts:** The object of the conspiracy – as outlined – was unlawful (violating §§ 381.986, 817.505, and FDUTPA, among other laws). Additionally, Defendants committed multiple **overt acts** in furtherance of the conspiracy, including but not limited to:

   a. **Leafwell** and **Fisher** soliciting **MMTC** participation and coordinating the structure, scheduling, and marketing of certification events, including the nature of MMTC involvement and patient-facing incentives.

   b. **MMTC** Defendants participating in and supporting the events and promotions, including through on-site presence, distribution of promotional materials, offering patient incentives, and/or providing

sponsorship, marketing support, or other consideration connected to event operations, as discovery will confirm.

c. **Leafwell's marketing team** publishing and disseminating advertisements for the free certification events to draw in patients (while omitting disclosure of the dispensary involvement).

d. **Dr. Diaz-Barcelo** and **Dr. Etemadnia** physically attending the events and issuing physician certifications to patients, and then directing or steering those patients toward MMTC representatives, locations, or promotions present or advertised in connection with the events.

e. **All Defendants** sharing information and coordinating schedules to ensure the events succeeded (for instance, joint planning of event logistics, Leafwell providing the MMTCs with patient counts or data, MMTCs preparing sufficient staff and promotional material for the expected patient turnout, etc.).

82. These acts were all done in pursuit of the **conspiracy's goal to unlawfully channel patients to the MMTC Defendants** and split the benefits among the conspirators.

83. **Knowledge and Intent:** Defendants entered and participated in the conspiracy with **actual knowledge** of its illicit nature. The statutes at issue

are well-known in the medical cannabis industry; indeed, My Florida Green and others publicly spotlighted that what Leafwell and the MMTCs were doing was clearly illegal. Defendants nevertheless persisted, demonstrating their willful intent to break the law for profit. Emails or communications (likely revealed in discovery) will show Defendants acknowledging or willfully failed to acknowledge the "legal risk" or need for discretion. This was not a case of accident or mistake – it was a deliberate agreement to engage in wrongdoing.

84. **Damage to Plaintiff:** As a direct and proximate result of the conspiracy, Plaintiff suffered the damages previously described (loss of patients, revenue, goodwill). The conspiracy enabled Defendants to achieve the harm that no one defendant could have caused on its own. For example, without the agreement, Leafwell alone could not have offered free services (it needed the MMTC funds), and a dispensary alone could not have lured patients away en masse (it needed the Leafwell doctors and platform). By combining forces, Defendants injured Plaintiff in a way that makes them **jointly and severally liable** for all resulting damages.

85. **Liability:** Under Florida law, **all conspirators are jointly liable for the acts of co-conspirators done in furtherance of the conspiracy.** Each Defendant, therefore, is liable for the Patient Brokering Act violations, FDUTPA

violations, and tortious interference that were carried out via the conspiracy, regardless of which defendant performed the particular act. The conspiracy itself is an actionable wrong once the underlying unlawful acts are established.

86. **Punitive Aspect:** The civil conspiracy here involves intentional misconduct and conscious disregard for the law and others' rights, which may justify an award of punitive damages against the conspirators, to the extent permitted by § 768.72, Fla. Stat. (Plaintiff will seek leave to amend to claim punitives if required by procedure.)

87. **Relief:** Plaintiff seeks an award of damages against all Defendants jointly and severally under this Count, in an amount to be determined at trial, reflecting the full measure of harm from the conspiracy. Plaintiff also seeks appropriate equitable relief to dismantle the conspiracy – including injunctive orders as stated in prior counts, ensuring that Defendants cannot continue to act in concert to violate the law. Additionally, Plaintiff requests that the Court order **disgorgement of any ill-gotten profits** obtained through the conspiracy, as equity permits, to prevent unjust enrichment (as further pled in Count VI).

## Count V – Tortious Interference with Business Relationships

88. **(Against Leafwell, Inc., Emily Fisher, Cresco Labs/Sunnyside, Insa, and The Flowery)** – Plaintiff MFG had and has valid business relationships and expectancies with its existing and prospective patients, and Defendants (other

than the physicians) intentionally and unjustifiably interfered with those relationships, causing harm to Plaintiff.

89. **Existing Relationships:** My Florida Green services thousands of patients in Florida and maintains ongoing relationships with them, especially because Florida law requires patients to renew their certifications every 210 days with a physician. These repeat visits mean that when a patient comes to MFG for an initial consultation, there is an expected cycle of return visits (assuming satisfaction) that constitutes an advantageous business relationship for MFG. At the time Defendants launched their scheme, MFG had a substantial active patient roster, many of whom were due for renewal appointments in 2025. MFG had a reasonable expectation based on past dealings that a high percentage of those patients would return to MFG for their renewals.

90. **Prospective Relationships:** MFG also had a reasonable expectancy of developing relationships with new patients entering the market. MFG expends significant effort on marketing and has referral networks (including satisfied patient referrals and physician referrals). Given MFG's reputation and widespread presence, many prospective cannabis patients would likely choose MFG for their certification if not given an improper enticement elsewhere.

91. **Defendants' Knowledge:** Leafwell's statewide campaign and "free certification" promotions reached overlapping geographic markets served by

Plaintiff, including Southwest Florida, and diverted both existing and prospective patients away from Plaintiff's compliant services. Even where Defendants' events were not confined to a single locality, their marketing and in-person clinics operated across Florida in a manner that foreseeably impacted Plaintiff's patient relationships and revenues in this Circuit and statewide.

92. **Interference and Inducement:** Defendants intentionally interfered with MFG's relationships by luring patients away through improper means, including marketing "free certification" events coupled with dispensary-linked promotions and incentives, and by failing to provide clear disclosure of MMTC involvement and any associated consideration connected to those events. For existing MFG patients, Defendants made it financially attractive not to return to MFG. For example, a patient due for a $150 renewal at MFG could instead pay $0 at Leafwell's event and even get a discount on medicine – a powerful enticement. Defendants LATERALLY **solicited MFG's customers**, advertising broadly and even within overlapping geographic locales, with the intent to cause those customers to break their continuity with MFG and choose Defendants' services/products instead.

93. This interference was unjustified. While competition itself is not improper, competition through unlawful conduct, deception, or improper inducements

is not protected and defeats any claim of privilege. Florida law recognizes a privilege for legitimate competitive efforts, but that privilege is lost when a defendant employs wrongful means or illegal conduct. Here, Defendants' methods (violating statutes, deceiving consumers) were not "proper" in any sense of the word. Furthermore, MFG and Leafwell (and the MMTCs) are not in privity or some special situation that would privilege interference; rather, Defendants' conduct clearly falls outside any acceptable business norm. No legal or social policy justifies paying doctors for referrals or deceiving patients – quite the contrary, public policy condemns it. Therefore, Defendants cannot claim any privilege or justification for their interference.

94. **Damages:** As a direct result of Defendants' interference, MFG has lost a considerable number of patient relationships and the accompanying revenue/profit. Each patient lost has a calculable value to MFG (in terms of initial visit fee, follow-ups, and renewals over time). For instance, losing 728 patients in 2025, as alleged, is an economic blow to MFG. MFG also suffered reputational harm – some patients might erroneously believe MFG was overcharging or gouging because competitors offered free service (when in fact those offers were illegitimate). Plaintiff's patient-volume and patient-diversion figures are derived from Plaintiff's scheduling, billing, and patient-roster records maintained in the ordinary course of business, including

appointment logs and renewal cadence tracking. Plaintiff will support these figures through documentary evidence and testimony, and will further quantify damages through expert analysis as appropriate. The quantifiable damages include lost fees from missed appointments and reduced market share. MFG will quantify these damages in detail via expert analysis if needed, but expects the amount to be well in excess of the jurisdictional threshold (likely several hundred thousand dollars in lost revenue over the course of a year, and future losses in customer lifetime value).

95. Additionally, the nature of Defendants' conduct – willful, malicious, and done with knowledge that they were hurting a competitor unlawfully – warrants consideration of **punitive damages** in connection with this tortious interference claim (subject to the requirements of Florida law on pleading punitives). Defendants essentially chose to flout the rules and damage MFG's business for their own gain, which is egregious conduct.

96. **Relief:** Plaintiff seeks judgment against the Defendants named in this Count for **compensatory damages** reflecting the full value of the business it lost due to the interference. Plaintiff also seeks **punitive damages** against these Defendants to punish and deter such conscious wrongdoing, as allowed by law (to be sought through proper motion at the appropriate time). Moreover, Plaintiff asks for **injunctive relief** to prevent Defendants from continuing to interfere with

Plaintiff's relationships by ongoing unlawful inducements – essentially the same injunctive relief described in prior counts, which will also have the effect of stopping further tortious interference. Attorneys' fees and costs are also sought if applicable (FDUTPA covers fees, and under the conspiracy count fees could potentially be shifted as damages, etc., but under pure interference Florida generally doesn't provide fees unless there's a statute or contract – here likely not, except via FDUTPA overlap).

**Count VI – Unjust Enrichment**

97. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein. This claim is pleaded in the alternative to Plaintiff's legal causes of action.

98. Benefit Received and Retained. Through the conduct alleged in this Complaint, Defendants received and retained substantial benefits with measurable monetary value, including increased patient volume, increased customer patronage and product sales by the MMTC Defendants, increased market penetration and goodwill for Leafwell associated with "free certification" promotions, and increased compensation and/or patient volume for the physician Defendants associated with event-based certification activity.

99. At Plaintiff's Expense; Inequitable Retention. Defendants' retention of these benefits occurred at Plaintiff's expense. As alleged, Defendants' "free certification" promotions, coupled with dispensary-linked incentives and coordinated marketing, diverted existing and prospective patients away from Plaintiff's compliant services, causing Plaintiff loss of revenues, loss of patient relationships, and loss of goodwill. It would be inequitable for Defendants to retain benefits obtained through the unfair and unlawful practices alleged herein, including patient steering and materially misleading "free certification" marketing without clear disclosure of dispensary involvement and any associated consideration.

100. Accounting and Relief Sought. The amount of Defendants' unjust gains is within Defendants' possession, custody, or control and will be confirmed through discovery. Plaintiff seeks restitution and disgorgement of unjust gains attributable to the challenged conduct, together with an accounting as necessary to quantify those gains, plus pre- and post-judgment interest and such other equitable relief as the Court deems just and proper. Plaintiff has verified this action. **(See. Exhibit 8)**

**WHEREFORE,** Plaintiff The Doc App, Inc. d/b/a My Florida Green respectfully requests that the Court enter judgment in its favor and award declaratory, injunctive, and monetary relief as follows:

A. **Declaratory Relief.** A declaration that the conduct alleged in this Complaint—i.e., the offering or provision of patient "free" medical marijuana certifications in Florida in connection with MMTC participation, sponsorship, underwriting, reimbursement, marketing support, or other remuneration or thing of value designed to induce patient patronage—violates Florida law and public policy as alleged in the Complaint.

B. **Permanent Injunctive Relief.** A permanent injunction prohibiting Defendants, and each of their officers, agents, employees, representatives, and all persons acting in active concert or participation with them, from engaging in the unlawful and unfair practices alleged in this Complaint. Specifically, Plaintiff requests an order:

   i. **Prohibiting dispensary-underwritten "free" certification events.** Enjoining Leafwell and any MMTC Defendant from offering, advertising, sponsoring, underwriting, subsidizing, reimbursing, or otherwise funding—directly or indirectly—physician evaluation and/or certification services for Florida medical marijuana patients in connection with any promotion or event represented to patients as "free" (i.e., where the patient pays no physician consultation/evaluation fee at the point of care), whether such funding is structured as

sponsorship, event support, marketing support, per-event payment, per-patient payment, reimbursement, setoff, or any other thing of value.

ii. **Prohibiting remuneration tied to referrals, patronage, or certifications.** Enjoining Defendants from offering, paying, soliciting, or receiving anything of value—including sponsorship payments, marketing payments, "event" payments, per-patient compensation, referral fees, discounts, credits, coupons, merchandise, or other remuneration—where the purpose or effect is to induce, influence, or reward (a) the referral or steering of patients to a particular MMTC, (b) patient patronage of a particular MMTC, and/or (c) the issuance of medical marijuana certifications in connection with MMTC-linked promotions or events.

iii. **Disclosure and transparency for any future patient-facing promotions.** To the extent any patient-facing promotion related to certification services is permitted under Florida law, requiring Defendants to provide clear and conspicuous written disclosure to patients—before scheduling and again at the point of care—of: (a) any MMTC involvement; (b) any MMTC financial or in-kind support; and (c) who is paying for what and what consideration (if any) is exchanged in connection with the promotion or event. Such disclosure must be

presented in a manner reasonably calculated to be understood by an ordinary patient and not buried in fine print.

iv. **Compliance measures necessary for effective injunctive relief.** Imposing reasonable compliance and reporting measures for a limited period, as the Court deems appropriate, to ensure adherence to the injunction, including record retention related to certification-event promotions, sworn periodic certifications of compliance, and/or production of limited documentation sufficient to confirm that certification services are not being funded or underwritten (directly or indirectly) by MMTCs.

C. **Compensatory Damages.** An award of compensatory damages in an amount to be proven at trial, including without limitation lost revenues and profits from diverted patients (initial and follow-up consultations), loss of business value and goodwill, and reasonable mitigation expenses incurred as a result of Defendants' conduct.

D. **Restitution / Disgorgement / Equitable Relief.** An award of restitution and/or disgorgement of benefits unjustly obtained through the conduct alleged, including revenues, profits, or other benefits received by any Defendant attributable to patient diversion and unlawful or unfair promotional practices, together with any accounting the Court deems necessary to

effectuate such relief. To the extent appropriate, the Court may impose equitable remedies such as a constructive trust to prevent unjust enrichment.

E. **Punitive Damages.** To the extent permitted by law and upon the requisite showing under Florida law and procedure, an award of punitive damages against the appropriate Defendant(s) based on willful, malicious, or grossly wrongful conduct.

F. **Attorneys' Fees and Costs.** An award of reasonable attorneys' fees and taxable costs as authorized by applicable law, including Fla. Stat. § 501.2105 (FDUTPA), and any other fee-shifting authority applicable to the claims and relief awarded.

G. **Pre- and Post-Judgment Interest.** Pre-judgment interest on all liquidated sums from the date of loss as allowed by law, and post-judgment interest at the statutory rate until paid.

H. **Other and Further Relief.** Such other relief—legal, equitable, and/or declaratory—as the Court deems just and proper, including any narrowly tailored corrective relief necessary to prevent recurrence of the unlawful practices alleged and to restore fair competition.

**AND** Plaintiff demands a trial by jury on all issues so triable.

Dated: December 24, 2025                Respectfully submitted,

*/s/ Jason K. Castro*

_____

JASON K. CASTRO, ESQ.
Law Office of Jason K. Castro, PLLC
625 Quincy Lane
Wexford, PA 15090
jason@goldengatelegalcenter.com
Counsel for Plaintiff

EXHIBIT 1

# Leafwell certifies thousands of Florida cannabis patients for free



▤ 1 min read



✻    🔍    Renew    Log in    ☰

Get your medical card online in minutes!                    Get started



Written by Rachael Beairsto | Edited by April Acerno | Last updated on Oct 3, 2025

## Table of contents

Why free certifications?

About Leafwell's pop-up events

Thousands of patients across Florida have been certified for medical cannabis at Leafwell's new pop-up events in Orlando, Jacksonville, and Miami. And these pop-up locations are expanding, with Tampa, Fort Lauderdale, and other cities on the horizon.

# Why free certifications?

At a time when healthcare costs are skyrocketing and millions can't access affordable medicine, Leafwell is on a mission to make it easier and more affordable for patients to get natural, effective, plant-based treatment.

Medical marijuana is playing a growing role in <u>pain management</u>, <u>anxiety relief</u>, and the treatment of other conditions.

In Florida, individuals interested in using cannabis medicinally are required to speak with a doctor in person to get certified. These certifications can cost anywhere from $100 to $300, which prevents many patients from seeking care at all.

Leafwell is stepping in with a bold solution: free medical marijuana certifications at in-person pop-up events across Florida.

# About Leafwell's pop-up events

At these events, patients can get evaluated by cannabis-knowledgeable physicians and certified for free. After certification, individuals also have the opportunity to meet with friendly staff from leading local dispensaries, such as Curaleaf, Sunnyside, and Insa, who provide event-specific promotions and discounts.

The experience is seamless for patients and enables dispensary partners to reach new customers and educate them about the best products and strains for their needs.

Check out highlights from our first pop-up event in Orlando, where over 450 patients were certified:



Leafwell Pop-Up Event | Orlando, FL | February 21-22, 2025

Find our upcoming Florida events here.

If you're interested in partnering with Leafwell at an in-person event or in another manner, visit this page.

## Get your medical marijuana card

Connect with a physician online or sign up for your in-person consultation.



Larger purchase limits

Access to higher potency strains

Save up to 40% on product taxes

Enhanced legal protection

| 🇺🇸 Florida ⌄ | Get started |

Share this

# Keep Reading



LIFESTYLE   MEDICAL MARIJUANA CARD

## The complete guide to cannabis in Orlando

Find out if weed is legal in Orlando, and how to access high-quality cannabis in your neighborhood.



LIFESTYLE

## The complete guide to cannabis in Tampa

Find out if weed is legal in Tampa and how to access high-quality cannabis in your neighborhood.



MEDICAL MARIJUANA CARD

## How to get and renew your medical marijuana card online

Learn the step-by-step process of obtaining and renewing your medical cannabis card online.

Your resource for everything 🌿 cannabis

# Subscribe



Name (optional)

Email *

State *

Sign Up



Switch language    EN

## Who we are

About us

Contact us

Research

Careers

Press

## MMJ Doctors

Reviews

Privacy policy

Cookie policy

Verification

## Our Top States

| | | |
|---|---|---|
| Arkansas | Maine | Texas |
| Georgia | Massachusetts | Virginia |
| Illinois | New York | Washington |
| Louisiana | Pennsylvania | West Virginia |

# Keep updated with our social media

     

**Support when you need it**

Reach out to our support team here

©2025 Leafwell. All rights reserved. Our website services, content, and products are for informational purposes only. Leafwell does not provide medical advice, diagnosis, or treatment. See additional information.



**Exhibit 2**



EXHIBITS

Skip to main content    FLMedicalTrees ✕    Search in r/FLMedicalTrees        Log In    ⋯

 **r/FLMedicalTrees** • 9mo ago
Big-Arrival-6918

## Free med card.

1:20 🔕                           ⏺⏺⏺ 5Gᴇ ▭

🌿        🔍    Renew    Log in    ☰

### 42% OFF ALL MEDICAL MARIJUANA CARDS                ✕

Use discount code 420SALE at checkout.

Claim 42% Off

# Get a FREE Florida Medical Marijuana Card!

**Free Medical Cards** for new Leafwell customers at in-person events!

Upcoming events:

- Alafaya, Orlando – 8-9 April
- Doral, Miami – 11-13 April

Best Care, Best Value          Quick and Easy Process          Free In-Person Certification

🔒 leafwell.com

Anyone ever do this? Ive never had my card so i understand its still $75 dollar for the state fee but thats it? Let me know.

⬆ 5 ⬇ · 💬 14

 slabsanddabsley • 9mo ago

Skip to main content ✕                                    Log In

FL requires patients have their initial qualifying appointment in person and then they are able to be seen via telemedicine with that same physician for renewals. Offering the free in person appointment allows leafwell to then see you via telemedicine when you need to renew, with the free appointment they are hoping to gain your long term business and your contact information to share with their dispensary partners.

If you were to switch doctors you'd also need to be seen in person for your first appointment, you can only be seen via telemedicine by a physician who has already seen you once in person so being seen by them in person gives you incentive to continue renewing with them.

⬆ 5 ⬇

 **InsaFlorida** • 9mo ago

Totally legit. Insa has sponsored the last two free certification events, and we'll be at the Orlando event on April 8-9th. There were lots of happy patients at past events! Stop by the Insa booth to learn about our products and promotions. We also raffling off $100 in store credit. Hope to see you there!

Important note, when you make an appointment Leafwell takes a $10 refundable deposit which gets refunded when you show up.

 ⬆ 2 ⬇

 **Commercial-Duck-4888** • 9mo ago

So is the $75 state card fee waived then? Or do they cover the cost of the doctor's rec as well?

 ⬆ 1 ⬇

 **InsaFlorida** • 9mo ago

You still need to pay the $75 state fee. This saves you from having to pay the $100-150 certification fee to the doctor. I believe renewals with Leafwell will be $99 after your initial certification.

⬆ 1 ⬇

 1 more reply ⌄

 **Round-Ad7534** • 9mo ago

Dang I've been putting off my recommendation renewal since it's $90. Would be amazing if renewals were included

 ⬆ 1 ⬇

 **InsaFlorida** • 9mo ago

Let me check with my contact to see if the event also covers renewals.

 ⬆ 1 ⬇

 **Round-Ad7534** • 9mo ago

Thank you

⬆ 1 ⬇

Skip to main content

Log In

 **Low_Discussion_9898** • 9mo ago

What are the times?

⊖  ⬆ 1 ⬇

 **InsaFlorida** • 9mo ago

Tuesday (4/8) from 3-8pm and Wednesday (4/9) from 3-8pm at the Celeste Hotel in Orlando. I would register for the event at: Leafwell.com/insafl to make sure you have a reservation. Hope to see you there.

⬆ 1 ⬇

 **r/FLMedicalTrees** • 2mo ago

Splurged yesterday now that I have my Med Card but Ugh, they taste horrible. I was so excited to get Live Resin carts... 🫣



8 upvotes · 63 comments

 **r/FLMedicalTrees** • 1mo ago

What's Everyone Medicating With Today?



35 upvotes · 38 comments

 **r/FLMedicalTrees** • 5mo ago

Is it easy to get approved for your med card?

11 upvotes · 40 comments

 **r/FLMedicalTrees** • 2mo ago

Medicating



27 upvotes · 17 comments

 **r/FLMedicalTrees** • 20d ago

Is getting a med card hard without a formal diagnosis?

7 upvotes · 33 comments

 **r/FLMedicalTrees** • 1mo ago

Assistance with getting card

4 upvotes · 22 comments

Skip to main content

Log In



41 upvotes · 43 comments

 r/FLMedicalTrees • 7mo ago



Let's talk about something else. The approved 22 applicants for new dispensaries.

49 upvotes · 60 comments

 r/FLMedicalTrees • 6mo ago

Where and how to get a medical card??

8 upvotes · 28 comments

 r/FLMedicalTrees • 6d ago

Has anyone else not felt like these deals are epic?



43 upvotes · 35 comments

 r/FLMedicalTrees • 23d ago

How to get card with no medical records? Never been to to a dr

10 upvotes · 48 comments

 r/FLMedicalTrees • 2mo ago

Best Flower Strains 3 Months Into FL Medical Journey

26 upvotes · 56 comments

 r/FLMedicalTrees • 5d ago

Which dispo do y'all prefer?

6 upvotes · 35 comments

 r/FLMedicalTrees • 8mo ago

First medical pickup



51 upvotes · 7 comments

 r/FLMedicalTrees • 12d ago

What's your favorite dispo and why?

Skip to main content

Log In



Be sure to take advantage of all the great holiday deals! What are you bringing to table this Thanksgiving?

5 upvotes · 10 comments

 r/FLMedicalTrees • 1mo ago



Crazy Amount of Dispensaries

3 upvotes · 9 comments

 r/FLMedicalTrees • 7d ago

My experience working at The Flowery (almost 2 years) – from budtender to shift lead

172 upvotes · 87 comments

 r/FLMedicalTrees • 2d ago

Yule 🪵



142 upvotes · 43 comments

 r/FLMedicalTrees • 4d ago

📢 Medical Home Grow 🚨



100 upvotes · 84 comments

 r/FLMedicalTrees • 6d ago

Aye Don't ever send me no shit like this again man or ima have to block yall lol



81 upvotes · 54 comments

 r/FLMedicalTrees • 4d ago

I think I'm done with 710



69 upvotes · 73 comments

r/FLMedicalTrees • 6d ago

Blue Lobster





Log In

r/FLMedicalTrees • 2d ago

This Pricing is Disgusting

60 upvotes · 78 comments

r/FLMedicalTrees • 6d ago

So much for the big sale on AL/CC.

57 upvotes · 76 comments

TOP POSTS

Reddit

reReddit: Top posts of April 7, 2025

Reddit

reReddit: Top posts of April 2025

Reddit

reReddit: Top posts of 2025

Reddit Rules  Privacy Policy  User Agreement  Your Privacy Choices  Accessibility  Reddit, Inc. © 2025. All rights reserved.

 FL

# Welcome to The Flowery Support Portal



🔍  Start typing your search…

The Flowery  ›  Promotions  ›  Event-Related

---

**Articles in this section**  ⌄

---

**Still need help?**  ⌄

---

# Leafwell @ III Points Event 10/17-10/18 | $100 Credit Terms

  **Customer Support**
2 months ago

Follow

---

**Credit Details**

**Eligibility:** Patients who attended the event that stopped by The Flowery's setup would have received a physical coupon card that would require the patient to scan a QR code and complete a registration form that would

# THE FLOWERY  FL

are not eligible.

**Duration:** The credit is valid **Friday, October 17, 2025,** through **Saturday, January 31, 2026**

**How to Redeem:** This credit must be redeemed online for a delivery or pick up order, it is not permitted to be used for an in-store (walk-in) order. Enter your unique code during checkout from the email you received.

**Limitations:**

- Patients are only eligible for (1) credit.

- Eligible patients can use either the $100 Credit or the 25% first-time discount, but not both. Each offer is limited to patients without prior purchases, and redeeming one forfeits the other.

- Unable to stack with any other discounts, including group discounts, birthday discount, and/or bulk discounts
  - Group discounts are defined as: first-time patient, Veteran, senior, and industry

- Unable to use with any loyalty tier redemptions

- All product(s) being purchased that a patient wishes to apply the credit towards must be in (1) transaction. Patients are not permitted to request multiple, separate orders to be combined. Multiple orders would need to be cancelled and then replaced as a single order.

- No rain checks or substitutions.

**Exclusions:**

- $100 Credit is applicable towards medicated products only.

- Not redeemable on apparel, accessories, merchandise, or devices.

**Other Conditions:**

- If a patient lost their physical coupon card, or they did not complete the registration form, or was determined to be ineligible



**THE FLOWERY** FL

- All purchased product(s) will be dispensed against your recommendation(s) in accordance with state requirements.

- If an eligible patient places an order using the credit, but then opts to cancel, the $100 credit will be forfeited.

- If an eligible patient places an order using the credit but then fails to receive their delivery or retrieve their pickup order, the $100 credit will be forfeited.

For further assistance or inquiries about this promotion, please contact our customer service team via chat or email.

**Share this:**

---

Was this article helpful?

Yes    No

0 out of 0 found this helpful

---

## Related articles

$100 Credit - Email | Terms

Dab Day Jax Event 10/25 | $100 Credit Terms

Leafwell St. Pete Event 10/3-10/4 | $100 Credit Terms

Need Help?

BMSM | November 2025

---

## Comments

0 comments

---

Article is closed for comments.

 FL



© 2025 Grow Shine Services Pvt. Ltd. All Rights Reserved.

**<u>Exhibit 5</u>**



**Exhibit 6**

 Outlook

---

**Response to Cease and Desist**

---

**From** Carlos Diaz-Barcelo <carlossamuelmd@me.com>

**Date** Sun 10/5/2025 7:21 PM

**To**   Jason Castro, Esq <Jason@goldengatelegalcenter.com>

**Cc**   Nick Garulay <nick@myfloridagreen.com>; jasoncastro@myfloridagreen.com <jasoncastro@myfloridagreen.com>; N. Grifoni <Nadine@goldengatelegalcenter.com>

Dear Mr. Castro,

I am writing in response to your cease-and-desist letter. Please be advised that, as of today, October 5, 2025, I have fully complied with the demands outlined in your notice. Specifically, I have discontinued my involvement and participation in the patient certification events, as requested.

Sincerely,

Dr. Diaz-Barcelo, M.D.

 Outlook

## Response to Cease-and-Desist Notice

**From** Amir Etemadnia <amir@allaboutmedicine.com>

**Date** Tue 9/23/2025 4:06 PM

**To**   Jason Castro, Esq <Jason@goldengatelegalcenter.com>

**Cc**   Nick Garulay <nick@myfloridagreen.com>; jasoncastro@myfloridagreen.com <jasoncastro@myfloridagreen.com>; N. Grifoni <Nadine@goldengatelegalcenter.com>; efisher@leafwell.com <efisher@leafwell.com>; zlevin@leafwell.com <zlevin@leafwell.com>

Dear Mr. Castro,

I am writing in response to your cease-and-desist letter, pursuant to the advice of my legal counsel. Please be advised that, as of today September 23rd , 2025, I have fully complied with the demands outlined in your notice. Specifically, I have discontinued all involvement in the medical cannabis certification events affiliated with Leafwell Inc.

Respectfully,

**Amir H. Etemadnia, M.D.**

**From:** Jason Castro, Esq <Jason@goldengatelegalcenter.com>
**Sent:** Wednesday, September 17, 2025 4:50 PM
**To:** Amir Etemadnia <amir@allaboutmedicine.com>; Ana Pucillo <ana@allaboutmedicine.com>
**Cc:** Nick Garulay <nick@myfloridagreen.com>; jasoncastro@myfloridagreen.com <jasoncastro@myfloridagreen.com>; N. Grifoni <Nadine@goldengatelegalcenter.com>; efisher@leafwell.com <efisher@leafwell.com>
**Subject:** Legal Notice: Cease and Desist Demand and Litigation Hold – Unlawful Certification Events

Dear Dr. Etemadnia,

Please see the attached **Cease and Desist Demand, Litigation Hold, and Notice of Intent to Initiate Civil Litigation** on behalf of my client, *The Doc App, Inc. d/b/a My Florida Green*.

This letter concerns your participation in **Leafwell-sponsored "free certification" events** in Florida that were subsidized by dispensaries. As outlined in the letter, such conduct constitutes violations of:

- Fla. Stat. § 381.986(1)(h) (physician–MMTC financial interest prohibition),

- Fla. Stat. § 817.505 (Patient Brokering Act),

- Fla. Stat. §§ 501.201–213 (FDUTPA), and

- related common law causes of action.

You are hereby directed to **immediately cease and desist participation** in such events and preserve all records, communications, and electronically stored information related to your involvement. Failure to comply and to confirm in writing within five (5) business days will result in the initiation of civil litigation without further notice.

Please review the attached letter carefully and respond by **September 24, 2025**.

Respectfully,

Jason K. Castro, Esq.

Fla Bar.: 118604

---

## LAW OFFICE OF JASON K CASTRO

Email: jason@GoldenGateLegalCenter.com

Service Email: CastroLaw.Service@Gmail.com

Mobile: (718)702-5540

---

THIS ELECTRONIC MAIL MESSAGE AND ANY ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE ADDRESSEE(S) AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT AN INTENDED RECIPIENT, OR THE EMPLOYEE /AGENT RESPONSIBLE FOR DELIVERING THIS E-MAIL TO THE RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS PROHIBITED. IF YOU RECEIVED THIS E-MAIL MESSAGE IN ERROR, PLEASE NOTIFY THE SENDER BY REPLYING TO THIS MESSAGE OR BY TELEPHONE AND DESTROY. THANK YOU.

**Please think green and print this email only if necessary.**

## VERIFICATION

I, **Nicholas Garulay**, declare under penalty of perjury that I am authorized to execute this Verification on behalf of Plaintiff **The Doc App, Inc. d/b/a My Florida Green**; that I have read the foregoing Complaint; and that the facts alleged therein are true and correct to the best of my knowledge and belief, based upon my personal knowledge, information received from others, and records maintained in the ordinary course of business.

Dated: _12 - 24_____, 2025.    _____

**Nicholas Garulay, as Pres/CEO**
for The Doc App, Inc. d/b/a My Florida
Green