UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE DOC APP, INC., d/b/a MY
FLORIDA GREEN

       Plaintiff,

      v.

Case No.: 2:25-cv-1231-KCD-DNF

LEAFWELL, INC.; EMILY
FISHER; CRESCO LABS,
LLC;11220 SE 179TH LLC, d/b/a
INSA-CANNABIS FOR REAL LIFE
(MMTC-2019-0016); BILL'S
NURSEY, INC., d/b/a THE
FLOWERY (MMTC-2019-0020);
CURALEAF FLORIDA, LLC, d/b/a
CURALEAF (MMTC-2015-0001);
VERANO HOLDINGS, LLC,
PLANTS OF RUSKIN, LLC, d/b/a
MÜV (MMTC-2017-
0010); CANSORTIUM FLORIDA,
LLC, d/b/a FLUENT (MMTC-2015-
0003); CARLOS SAMUEL DIAZ-
BARCELO; M.D., CARLOS DIAZ-
BARCELO, M.D., P.A., AMIR
HESAM ETEMADNIA, M.D., and
ALL ABOUT MEDICINE LLC,

       Defendants,

_____/

## **ORDER**

Few people enjoy a trip to the doctor. Long waits. Old magazines.

Pricey bills. The experience is usually a drag. Defendant Leafwell, Inc. offers

something different. It holds pop-up clinics across Florida tailored to patients

seeking medical marijuana certifications. Its doctors evaluate, diagnose, and certify patients for medical marijuana use—all for free.

Plaintiff The Doc App, Inc. (doing business as My Florida Green "MFG") wants this to stop. Insisting that Leafwell's clinics violate Florida law, MFG sued in state court. Leafwell then removed the case here. (Doc. 1.)[1]

Now, the parties are trading procedural blows. MFG wants the case sent back to state court and seeks the attorney's fees incurred fighting the removal. (Doc. 9.) Leafwell opposes remand and counters with a request of its own: it wants the fees spent defending a previous, now-dismissed lawsuit by MFG, and it asks the Court to freeze this case until MFG pays up. (Doc. 14, Doc. 30.)  As explained below, this case is heading back to state court. But neither side will get the attorney's fees they ask for, and the litigation will not be put on hold.

## I. Background

Florida's medical marijuana regulatory scheme depends on doctors. Floridians cannot buy medical marijuana from dispensaries until they are issued a "medical marijuana use registry identification card." Fla. Stat. § 381.986(8)(e)16d. And before getting that card, they need to be certified by a "qualified physician." *Id.* § 381.986(1)(l), (m). These doctors cannot have "any

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

direct or indirect economic interest[s] in" a medical marijuana dispensary. *Id.* § 381.986(3)(b). And they cannot certify a patient until satisfying a list of requirements. *Id.* § 381.986(4)(a). This includes examining the patient; diagnosing the patient with a "qualifying medical condition"; and determining that medical marijuana use "would likely outweigh the potential health risks for the patient." *Id.* § 381.986(4)(a)1-3.

MFG "operates a medical marijuana physician network and patient certification service." (Doc. 5 ¶ 3.) It helps patients obtain medical marijuana certifications while "maintain[ing] strict independence from any dispensary." (*Id.*) It offers patients "independent medical advice, untainted by any dispensary influence." (*Id.* ¶ 27.) And it charges patients "approximately $99 to $200 for initial visits." (*Id.* ¶ 27.)

Leafwell connects patients with doctors too. (*Id.* ¶ 4.) Only it does so free-of-charge. It holds "pop-up" clinics where patients can be examined and certified for medical marijuana use by a "Leafwell-affiliated doctor." (*Id.* ¶ 32c.) And the doctors are not alone at these events. The clinics also host medical marijuana dispensaries, intentionally bringing patients and sellers together under one roof. (*Id.* ¶ 32.) As MFG describes it, "[d]ispensary representatives are present on-site, often with branded tables or booths." *(Id.* ¶ 32d.) They give patients "event-specific promotions and discounts on

[marijuana] products." (*Id*.) They even "assist patients in registering for" medical marijuana cards and direct them to the nearest dispensary. (*Id*.)

MFG believes this entire operation breaks the law. It sued Leafwell once before, but quickly abandoned the case after my colleague, Judge Sheri Polster Chappell, rebuked its in-house counsel for making "numerous misrepresentations of legal authority." *See The Doc App, Inc. v. Leafwell, Inc.*, No. 2:25-CV-838-SPC-NPM, 2025 WL 3288251, *1 (M.D. Fla. Nov. 26, 2025). Seeking emergency injunctive relief, attorney Jason Castro had filed a motion littered with fabricated cases and sham quotes—the apparent hallmarks of reckless AI use. When ordered to explain himself, counsel doubled down, insisting there was "no misconduct" to address. *Id*. at *4. Unpersuaded, Judge Chappell deemed the response a "colossal collection of excuses" and sanctioned Castro for his bad-faith conduct. The penalties were steep: paying Leafwell's attorney's fees, attending an ethics CLE on AI, a referral to the Florida Bar, and a requirement to attach the sanctions order to any new case filed in this district for two years. *Id*. at *6.

Leafwell then went on the offensive, filing its own lawsuit against MFG. *See Leafwell, Inc. v. The Doc App, Inc.*, No. 2:25-cv-1132-JES-DNF (M.D. Fla. 2025). That case accuses MFG of weaponizing the judicial system with its AI-hallucinated filings and waging a smear campaign to destroy a competitor.

4

MFG refused to back down. It sued Leafwell again—but this time, it sought refuge in state court. The new complaint largely repackages MFG's earlier claims but adds a twist to the roster: a slew of Florida-based dispensaries and doctors are now named as defendants. (Doc. 5.) Unwilling to litigate in state court, Leafwell promptly removed the case here under diversity jurisdiction. To explain away the new in-state defendants, Leafwell argues MFG fraudulently joined them to dodge a federal forum. (*See* Doc. 1.)

Diversity jurisdiction requires complete diversity, "which means that every plaintiff must be diverse from every defendant." *Jones v. Steak N Shake Operations, Inc.*, No. 616CV758ORL28TBS, 2017 WL 4122605, at *1 (M.D. Fla. Aug. 31, 2017). We lack that complete diversity here. To be sure, Leafwell and a few co-defendants—Emily Fisher, Cresco Labs, LLC, and Verano Holdings, LLC—apparently reside outside the Sunshine State. But the geographic divide ends there. The rest of the lineup—including 12220 SE 179th LLC, Curaleaf Florida, LLC, Plants of Ruskin, LLC, Cansortium Florida, LLC, Carlos Samuel Diaz-Barcelo, Carlos Diaz-Barcelo, M.D., P.A., Amir Hesam Etemadnia, M.D., All About Medicine, LLC, and Bill's Nursery—are all Florida residents. (Doc. 5 ¶¶ 7, 9-11, 13, 14.)

That brings us to the current standoff. MFG wants the case sent back to state court, plus the attorney's fees spent fighting removal. (Doc. 9.) Leafwell resists at every turn. It stresses that each resident defendant has

been fraudulently joined. (Doc. 1 at 21-28.) It alternatively argues that the Court has ancillary jurisdiction over the case. (Doc. 30 at 24-26.) And Leafwell wants more than just to stay here. It wants MFG to pay the fees from the first, abandoned lawsuit, and it asks the Court to freeze this case until MFG foots the bill. (Doc. 14.)

## II. Discussion

Leafwell comes up empty-handed. The math is simple: MFG raises a potentially valid claim against a Florida resident—Bill's Nursery—under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). That alone destroys complete diversity and sends this dispute back to state court. With the case returning to the state forum where it began, Leafwell cannot collect fees from the prior federal action, nor is a stay appropriate. The Court will take up the remand and jurisdictional questions first, then address Leafwell's motion.

### A. MFG's Motion to Remand and for Fees

A state-court case may be removed to federal court if it could have been brought there originally. 28 U.S.C. § 1441. "Pertinent here, federal courts have original jurisdiction over . . . civil actions where [there is] diversity." *Clyde v. Progressive Am. Ins. Co.*, No. 2:25-CV-755-KCD-DNF, 2025 WL 2802427, at *1 (M.D. Fla. Oct. 2, 2025). "Diversity jurisdiction is triggered when the parties are citizens of different states and the amount in

6

controversy exceeds $75,000." *Brittell v. CBRE, Inc.*, No. 2:25-CV-638-JLB-KCD, 2025 WL 2581815, at *1 (M.D. Fla. Aug. 29, 2025).

Cases removed based on diversity jurisdiction must be remanded to state court if the parties are not completely diverse. *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). "But there's a catch—if the plaintiff fraudulently joins a non-diverse defendant to defeat complete diversity, then that non-diverse defendant is not considered" for jurisdiction purposes. *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 841 F. App'x 132, 134 (11th Cir. 2020). "The doctrine of fraudulent joinder is a narrow exception to the complete diversity rule." *Jones v. Am. Cont. Sys., Inc.*, No. 2:25-CV-980-KCD-NPM, 2026 WL 265750, at *1 (M.D. Fla. Feb. 2, 2026). "It allows a federal court to ignore the citizenship of a non-diverse defendant, but only if the removing party can show there is no legitimate basis for that defendant's presence in the suit." *Id.*

"The bar for fraudulent joinder is high—extremely high." *Stella v. Am. Cont. Sys., Inc.*, No. 2:25-CV-00992-KCD-NPM, 2026 WL 265717, at *2 (M.D. Fla. Feb. 2, 2026). It requires the removing defendant to show by clear and convincing evidence "that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdiction facts to bring the resident defendant into state court." *Stillwell*, 663 F.3d at 1332.

7

Leafwell argues both scenarios apply here, and alternatively leans on ancillary jurisdiction to keep the case in federal court. Neither argument works. The Court tackles Leafwell's jurisdictional defenses first, then turns to MFG's fee request.

**i.**

Proving that a plaintiff has "no possibility" of success against a resident defendant is a tall order. The standard is extremely plaintiff-friendly. We look at the facts in the light most favorable to the plaintiff. "[A]ny uncertainties about state substantive law" must also be resolved "in favor of the plaintiff." *Stillwell*, 663 F.3d at 1333. And the merits cannot be weighed "beyond determining whether [the claim] is an arguable one under state law." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

It is worth emphasizing that this test asks only whether there is a "possibility" that the plaintiff has stated a valid claim against a resident defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "Where a plaintiff states even a colorable claim, . . . the case should be remanded to state court." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In other words, if there is even a chance that a state court could validate just one claim against a single non-diverse defendant, our job is done. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th

8

Cir.1983). That leaves Leafwell with a tough road ahead. And as the Court sees it, MFG's FDUTPA claim proves to be an unavoidable pothole.

FDUTPA sets the ground rules for honest commerce. It broadly prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. Courts are instructed to construe the statute liberally "to promote the policy of protecting the consuming public and legitimate business enterprises from those who engage" in unfair business tactics. *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019). Anyone hurt by a violation can file a civil claim. *Vintage Motors of Sarasota, Inc. v. MAC Enters. of N. Carolina, LLC*, 336 So. 3d 374, 376 (Fla. Dist. Ct. App. 2022); *see also* Fla. Stat. § 501.211(2). To bring that suit, "a plaintiff must allege (1) a deceptive or unfair act in the conduct of trade or commerce; (2) causation; and (3) actual damages." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023). While a FDUTPA-plaintiff need not be a consumer, he still must show a consumer injury. *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015); *Ounjian*, 89 F.4th at 860.

It is possible that MFG's FDUTPA claim clears this bar. MFG says that dispensaries secretly finance Leafwell's pop-up clinics, creating a backdoor payment system for the examining doctors. That setup, MFG contends, gives

the doctors an indirect economic interest in the very dispensaries hovering just outside the exam room doors. And under Florida law, that financial conflict makes them biased and legally unqualified to certify patients.

Meanwhile, patients are not told any of this. They show up expecting to undergo unbiased medical examinations. And they think they are being objectively advised that medical marijuana use is right for them. Instead, MFG alleges, they get tainted evaluations from doctors with financial skin in the game. The result is a classic consumer injury: patients unwittingly receive a compromised, lesser-quality medical examination than the one they thought they were getting.

MFG's theory may be novel, but it falls short of foolish. Similar bait-and-switch claims are not unheard of in this context. *See CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *16 (M.D. Fla. Feb. 15, 2018) (suggesting business falsely identifying itself as product's authorized distributor could have formed basis of FDUTPA claim had "consumers received any product other than a true [version of the] product"); *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 5:19CV55-TKW-MJF, 2022 WL 1495005, at *7 (N.D. Fla. Apr. 11, 2022) (denying summary judgment on FDUTPA claim given evidence that "consumers did not get what they bargained for"); *Whertec, Inc. v. Salmon*, No. 3:20-CV-1254-BJD-PDB, 2021 WL 3555676, at *6 (M.D. Fla.

10

Apr. 28, 2021). At this stage, MFG does not need an airtight case. *See, e.g.*, *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007). So for fraudulent joinder purposes, the FDUTPA claim will do.

Still, Leafwell stresses that MFG cannot possibly prove this claim for two reasons. First, it disputes that its clinics funneled customers to participating dispensaries. As Leafwell notes, getting certified for medical marijuana use is only the first step in a roughly two-week process. Certified patients cannot immediately purchase medical marijuana until they are placed on Florida's medical marijuana use registry and issued identification cards. *See* § 381.986(8)(e)(16)d. Leafwell thus argues that its clinics cannot steer customers to dispensaries since marijuana cannot legally be sold right then and there.

This argument fails in a few different ways. For one, it conflates illegality with impossibility. Just because dispensaries cannot lawfully sell medical marijuana to newly-certified patients does not mean they didn't. Yet that is what Leafwell's argument boils down to. It stresses that there is no way this claim can be proven since that would mean something illegal happened (which is sort of MFG's general point).

To be sure, Leafwell offers evidence that no medical marijuana sales ever occurred at its clinics. Fair enough. But MFG's patient-steering theory does not rely on such sales. It instead cites the clinics' free certifications,

11

dispensary discounts, and registration assistance. (Doc. 5 ¶¶ 26, 32, 37.) MFG claims this blend of enticements unfairly gives dispensaries first crack at freshly-minted customers and illegally undercuts its own business model. So regardless of whether the clinics hosted on-site sales, MFG's patient-steering theory remains unscathed.

All that aside, patient-steering is just one aspect of MFG's FDUTPA claim. FDUTPA plaintiffs must plead an "unfair *or* deceptive" act or practice. Fla. Stat. § 501.204(1) (emphasis added); *see also PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003); *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-CV-604-T-33JSS, 2020 WL 6382006, at *6 (M.D. Fla. Oct. 30, 2020) ("FDUTPA creates a cause of action for either a deceptive or unfair practice[.]"). Though MFG alleges that Defendants unfairly steer patients, it also pegs the clinics as deceptive. Given this, MFG's FDUTPA claim would survive even if its unfair competition theory crumbled.

Separately, Leafwell downplays the link between its doctors and the dispensaries. It insists that its doctors were never paid by any dispensary. And it stresses that these doctors never referred patients to any specific dispensary or its products. Rather, Leafwell contends that its doctors were paid flat-fees unconnected to any kind of patient-certification quota.

These are factual disputes that the Court cannot resolve here. But even so, none of this makes MFG's deceptive practice theory impossible. MFG

claims Leafwell and the dispensaries had a financial arrangement which made the doctors financially interested in the dispensaries. And it insists all this was hidden from patients. Leafwell does not deny that dispensaries paid to participate in its clinics. Nor does it show that it disclosed this to consumers.

Against this backdrop, the doctors' compensation appears just one step removed from the dispensaries. That arrangement arguably creates an indirect economic interest, which means the FDUTPA claim has legs. That is all it takes, so Leafwell has not proven its first theory of fraudulent joinder.

### ii.

The second path to proving fraudulent joinder requires "outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs*, 154 F.3d at 1287. But this "form of fraudulent joinder is exceeding rare." *Solar Eclipse Inv. Fund VII, LLC v. T-Mobile USA, Inc.*, No. 20-25257-CIV, 2021 WL 4085504, at *5 (S.D. Fla. Feb. 16, 2021).

Leafwell lodges several arguments. It starts by pointing out that MFG listed several resident-defendants by fictitious names. Leafwell is right about the law: when determining diversity jurisdiction, courts must disregard the citizenship of fictitious defendants. 28 U.S.C. § 1441(b)(1); *Halsey v. Popeyes Louisiana Kitchen Inc.*, No. 2:20-CV-00912-ACA, 2020 WL 10145947, at *3 (N.D. Ala. July 31, 2020). And four of the alleged resident-defendants here

13

appear to be fictitious parties. But not Bill's Nursery. Leafwell does not dispute this defendant's citizenship. So even after casting those fictitious parties aside, complete diversity is still lacking.

Next, Leafwell insists that MFG listed these resident defendants for one reason only: to defeat diversity jurisdiction. But "the fraudulent joinder analysis turns on the objective validity of the plaintiff's theories of jurisdiction and liability as to the non-diverse defendant, not on its subjective motivations for joining that defendant." *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 893 n.3 (11th Cir. 2011). "[T]he motive of the plaintiff, taken by itself, does not affect the right to remove." *Chicago, R.I. & P. Ry. Co. v. Schwyhart*, 227 U.S. 184, 193 (1913). So this point fails. *See, e.g.*, *Melton v. Gen. Motors LLC*, No. 1:14-CV-1815-TWT, 2014 WL 3565682, at *3 (N.D. Ga. July 18, 2014); *Ramey v. Gilbert*, No. 5:05-CV-244 (CAR), 2005 WL 3149381, at *4 (M.D. Ga. Nov. 23, 2005).

Leafwell next pivots to claim splitting. Because Leafwell is already suing MFG in a different federal case, Leafwell argues MFG was required to bring these claims there as compulsory counterclaims. It is a creative argument, but not a successful one. *See Horne v. Frankenmuth Mut. Ins. Co.*, No. 1:19-CV-130 (LAG), 2019 WL 9899511, at *2 (M.D. Ga. Nov. 7, 2019). Even assuming these claims are indeed compulsory, MFG is not barred from bringing them in a separate lawsuit. The Federal Rules of Civil Procedure

14

attach a specific consequence to omitting a compulsory counterclaim: a party risks losing the right to assert it once the first case concludes. *Id.* To be sure, filing a parallel suit is a risky avenue. If the other case reaches a judgment first, MFG's claims here might be permanently barred. *Booth v. Bd. of Regents*, No. CIV.A. 7:05-CV-34, 2005 WL 2099246, at \*7 (M.D. Ga. Aug. 30, 2005). But taking a procedural gamble is not the same thing as violating a strict legal prohibition, and it certainly is not fraud. *Harris v. Huffco Petroleum Corp.*, 633 F. Supp. 250, 256 (S.D. Ala. 1986). Leafwell has no authority suggesting that claim splitting amounts to fraudulent joinder. Without any precedent to support that leap, the Court declines to make it. *Cf. Holmes v. Heritage Prop. & Cas. Ins. Co.*, No. 320CV01003RAHSRW, 2021 WL 5614771, at \*6 (M.D. Ala. Nov. 30, 2021).

Leafwell makes one final plea: it urges the Court to ignore the complaint's jurisdictional facts because they appear to be the product of artificial intelligence. But even assuming Leafwell is right, none of the purported AI hallmarks have anything to do with the FDUTPA claim against Bill's Nursery. If MFG improperly used AI again, a state court can deal with it. But a plaintiff's sloppy drafting habits cannot magically manufacture federal jurisdiction, nor can they stave off a remand.

### iii.

15

That leaves Leafwell's final fallback: a plea for ancillary jurisdiction. Leafwell argues that its other pending federal lawsuit against MFG provides ancillary jurisdiction to keep the case anyway. But that logic fundamentally misreads how the doctrine works. Ancillary jurisdiction is not a bridge between two separate lawsuits. It allows a federal court to resolve incidental claims *within* a single case over which it already has original jurisdiction. *See Peacock v. Thomas*, 516 U.S. 349, 355 (1996). Because MFG filed this action as a standalone lawsuit in state court, its removal must stand or fall on its own jurisdictional merits. *Id.* at 355-56; *cf. Fla. Med. Ass'n, Inc. v. Dep't of Health, Ed. & Welfare*, 454 F. Supp. 326, 330 (M.D. Fla. 1978); *Hall v. Alabama*, No. 2:09-CV-342-MHT WO, 2010 WL 582076, at *7 (M.D. Ala. Feb. 18, 2010). Leafwell cannot piggyback on a completely different federal docket number to manufacture subject-matter jurisdiction here. *See Howard & Assocs., Att'ys-at-L., P.A. v. Lieff Cabraser Heimann & Bernstein, LLP*, No. 3:15-CV-1109-J-39JRK, 2016 WL 7232566, at *7 (M.D. Fla. Sept. 26, 2016) ("This Court cannot assert [ancillary] jurisdiction pursuant to 28 U.S.C. § 1367 over this case which is not a part of a case or controversy pending before it, nor can it ignore the strict removal requirements of 28 U.S.C. § 1441."). Since complete diversity is lacking, original jurisdiction is dead on arrival, and ancillary jurisdiction simply does not exist.

**iv.**

16

Finally, there is the matter of the bill. MFG wants Leafwell to pay the attorney's fees incurred from fighting the removal. But fee-shifting upon remand is the exception, not the rule. The removal statute allows fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*, 995 F.3d 1289, 1296 (11th Cir. 2021). "It is completely within the Court's discretion whether or not to award attorney's fees pursuant to this statute." *McMillan v. UAW-Ford Legal Servs. Plan*, No. 8:10-CV-1561-T-33MAP, 2011 WL 862047, at *2 (M.D. Fla. Mar. 10, 2011). "Even when the removing party lacks an objectively reasonable basis for seeking removal, district courts have the discretion to consider unusual circumstances that warrant declining to award fees." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 752 F. App'x 902, 904 (11th Cir. 2018).

Leafwell's removal passes the test. While its fraudulent joinder theories failed, they were not objectively unreasonable. MFG is prosecuting a novel theory of liability under a relatively new statutory scheme, and Leafwell raised good-faith, if unsuccessful, arguments in response.

But even if Leafwell's removal had been entirely baseless, the Court would still decline to award fees. MFG's prosecution of these claims has been a procedural mess. Its first attempt ended in a swift voluntary dismissal and steep sanctions against its in-house counsel. *See The Doc App, Inc.*, 2025 WL

17

3288251, at *5-6. And a glance at the current complaint suggests MFG has not entirely cured its drafting ailments. (*See* Doc. 5 ¶¶ 52-67.) Given that track record, equity hardly demands rewarding MFG with attorney's fees. *See Maxwell v. E-Z-Go, a Div. of Textron, Inc.*, 843 F. Supp. 2d 1209, 1217 (M.D. Ala. 2012).

## B. Leafwell's Motion to Stay and for Fees

Leafwell makes one final push. Invoking Federal Rule of Civil Procedure 41(d), it asks the Court to award the attorney's fees it spent defending MFG's first, abandoned lawsuit. Leafwell also wants this current case frozen until MFG pays up.

Rule 41(d) does allow a court "to order a plaintiff to pay all or part of the costs of a previously dismissed action" when the plaintiff files a sequel raising the same claims against the same defendant. *CRC Transp. LLC. v. Caterpillar Inc.*, No. 4:24CV268-MW/MAF, 2024 WL 5508345, at *1 (N.D. Fla. Aug. 21, 2024). It also gives courts the power to stay the new proceedings until the bill is paid. Fed. R. Civ. P. 41(d)(2). But there is a glaring jurisdictional catch: the rule applies only when the *second* action is filed in federal court. *See Sargeant v. Hall*, 951 F.3d 1280, 1287 (11th Cir. 2020). When a plaintiff files the sequel in state court, "it should be state law which determines whether and to what extent costs and/or fees should be assessed against the plaintiff." *Id.*

18

That precedent squarely forecloses Leafwell's request. MFG filed this second action in state court. The only reason it is sitting on a federal docket is because Leafwell improperly removed it. Because Rule 41(d) does not apply to a case originally filed in a state forum that was also not properly removed, Leafwell gets neither its fees nor a stay. *Id.* at 1288, 1283 n.2. The motion is denied.

### III. Conclusion

There is much to criticize about MFG's conduct in this dispute. Its litigation strategy has been marked by fabricated citations, sanctioned attorneys, and a sequel complaint that seemingly tries to dodge a federal forum at all costs. Leafwell is understandably frustrated. But federal jurisdiction is not a reward for good behavior, nor is it a punishment for the bad. We must guard our jurisdictional boundaries zealously, no matter who benefits in the short term. Because MFG has stated a potentially valid claim against a Florida resident, complete diversity is destroyed. So this Court lacks the power to do anything but send the case back to where it came from.

Accordingly, MFG's Motion to Remand (Doc. 9) is **GRANTED IN PART and DENIED IN PART** while Leafwell's Rule 41(d) Motion to Stay and for Fees (Doc. 14) is **DENIED**. The Clerk is **DIRECTED** to remand this case to state court by transmitting a certified copy of this Order to the Clerk for the Twentieth Judicial Circuit in and for Collier County. The state-court

19

case was previously captioned 25CA002981. Following remand, the Clerk is directed to close the case.

**ORDERED** in Fort Myers, Florida on May 5, 2026.

Kyle C. Dudek
United States District Judge